Theresa Mulqueen SKEETER, Plaintiff,

v.

CITY OF NORFOLK, et al.,
Defendants.

Civ. A. No. 87–131–N.

United States District Court,
E.D. Virginia,
Norfolk Division.

Sept. 21, 1987.

Edward A. Fiorella, Jr., Allen J. Gordon, Chesapeake, Va., for plaintiff.

Philip R. Trapani, City Atty., Harold P. Juren, Deputy City Atty., Andre A. Foreman, Molly T. Tami, Asst. City Attys., Dean T. Buckius, Vandeventer, Black, Meredith & Martin, Norfolk, Va., for defendants.

## ORDER

CLARKE, District Judge.

This is an employment discrimination case in which plaintiff has charged defendants with violations of 42 U.S.C. §§ 1981, 1983, 1985(3), 2000e–2(a)(1), and 2000e–3(a). Plaintiff also claims that her rights to due process were violated when she was terminated from her employment without a hearing of any kind. Plaintiff, Theresa Mulqueen Skeeter, states in her Complaint that she was discriminated against because of her race; white. Defendants in this action are the City of Norfolk and four individuals, all black, who were employees of the City and supervisors of plaintiff during her employment period. The individual defendants, Jerome Harrison, George Crawley, Clarence Cuffee and Catherine Kearney have been named both as individuals and in their official capacities. All defendants have made a Motion for Summary Judgment. This Court has heard the parties' oral arguments on the Motion. Therefore, this matter is ripe for disposition.

The Complaint follows plaintiff's period of employment chronologically. A summarization of plaintiff's allegations reveals the following claims. Plaintiff worked for the City of Norfolk from June 1982 until August 1986. Plaintiff began her employment as a senior clerk typist. She claims that she was promised a promotion, if her work proved satisfactory, in four months. Apparently, plaintiff never received this promotion. According to plaintiff, during the period of her employment she was required to perform numerous tasks outside her job description, while at one point "there were numerous other secretaries in the Department who were receiving equal or better salaries, doing a minimal amount of work and who had job description's ex-

ceeding those of the [plaintiff]." Complaint, paragraph 14. Despite performing these tasks satisfactorily and despite plaintiff's "superior ability", plaintiff failed to receive any advancement, promotion, or additional compensation during her employment with the City.

Plaintiff's problems with her supervisors apparently surfaced when she first objected to being assigned additional duties and she was "threatened by [defendant] Crawley and was informed that she would not receive any promotions because she did not 'fit the mold' for a promotion." Complaint, paragraph 15. Plaintiff was then transferred by Crawley to the Park Place Multi-Service Center which had a less desirable location and less favorable working conditions. Plaintiff challenged this transfer by filing a grievance.

Plaintiff next complains that she was not allowed to take her annual leave, a condition that was apparently resolved by the granting of leave in Christmas of 1984. Plaintiff relates another incident where she was discriminatorily denied leave and unfairly disciplined for taking same. (This incident involved defendants Harrison and Cuffee.) Plaintiff claims that Harrison made false and malicious claims about her character and ability.

Allegedly in response to a grievance filed by plaintiff, Harrison transferred her to the Huntersville Center—an even less desirable working location. It was then that plaintiff claims defendants Harrison, Crawley and Cuffee "commenced a campaign of fabrication, falsehoods, and slander, making derogatory comments about Skeeter's character and ability." Complaint, paragraph 24.

With her second transfer, plaintiff came under the supervision of defendant Kearney. Plaintiff claims their initial excellent working relationship resulted from the fact that plaintiff "performed the majority of Kearney's major duties." Complaint, paragraph 26. Subsequently, however, Kearney was allegedly induced by Harrison and Cuffee to write unfavorable job reports

and to cooperate in a plan to terminate plaintiff from her job without cause.

## I. Race Discrimination

■ Plaintiff apparently attributes the allegedly disparate treatment she received from defendants to, and bases this action upon, race discrimination. Although her Complaint merely lists statutes without specifically alleging the corresponding facts or basis for stating violations thereof, a careful reading shows that plaintiff offers the following explanations for defendants' offending behavior:

13. The complainant was denied promotion or advancements because of her race and the desire of her Supervisors (Crawley and Harrison) to promote persons of the black race.

15. That because of her objection to additional duties without any reward or promotion, the complainant was ... in retaliation for her questioning the actions of Crawley.

16. [He] informed Skeeter that there was not any future for her in that department as a "white female."

\* \* \* \* \* \*

18. This was an example of the clear abuse of one's authority and an inconsistent application of personnel practices of Harrison, a black, against the complainant, a white, based solely upon the complainant's race and to "strike" out at complainant becasue [sic] she was far more able with substantially more ability than Harrison, and that she had embarrassed Harrison by her lack of knowledge in performing his duties.

\* \* \* \* \* \*

20. Harrison had consistently, up until that time, permitted black employees to take leave without any notice....

21. [A]pplication of a reprimand ... was solely to punish the complainant because of her race, background, and ability, which made a mockery of many of the black employees in that Department.... In each of these cases the dilatory employee was black. It was apparent that the defendants, Crawley, Cuffee, and Harrison had two (2) sets of standards and regulations, one for whites and another for blacks.

\* \* \* \* \* \*

24. The only difference [between plaintiff and other employees] was Skeeter's superior ability and her race.

Plaintiff quotes Edgar Hoggard in paragraph 16 of her Complaint as saying there was no future for her as a "white female." Hoggard is not a defendant in this action. Plaintiff also claims sex discrimination in two of her three underlying EEOC charges. However, her Complaint in this action appears to present only a race discrimination claim. There are no facts alleged that refer to or support a contention of discrimination based on sex. In fact, the only mention in the Complaint of plaintiff's sex is made when quoting an individual not a party to this lawsuit, as discussed above. Additionally, plaintiff makes reference to her superior ability being motivation for alleged discriminatory actions of the various defendants. However, discrimination based on superior job skills and ability does not support a claim under any of the statutes upon which plaintiff relies. Therefore, this Court will treat plaintiff's statutory claims as ones based on race discrimination.

Defendants have proffered a number of arguments in support of their Motion for Summary Judgment. Most notably, defendants claim that plaintiff is a member of the *black* race. Defendants rely primarily on the fact that in a previous action against the City of Suffolk, plaintiff represented herself as black, and claimed to be the victim of racial discrimination. Defendants include as exhibits with their Motion for Summary Judgment a copy of the EEOC charge form, signed by plaintiff, in which she designated her race as black. They also include an EEOC instruction booklet which contains the following information under the heading "Race/Ethnic Identification":

The concept of race as used by the Equal Employment Opportunity Commission does *not* denote clear-cut scientific definitions of anthropological origins. For the

purposes of this report, an employee may be included in the group to which he or she appears to belong, identifies with, or is regarded in the community as belonging. However, no person should be counted in more than *one* race/ethnic category.

Defendants argue that since plaintiff identified herself as a member of the black race and claimed, in a lawsuit, that she had been discriminated against on that basis, she is now precluded from claiming that she is white. Additionally, each of the individual defendants has submitted an affidavit which states, "It was my belief that Ms. Skeeter was a member of the black race." Each affiant also explains why he or she believed that plaintiff was black.

In response, plaintiff argues that the court in the earlier suit made a finding that plaintiff was white and directed a verdict for the City of Suffolk. Plaintiff, therefore, claims that defendants are "collaterally estopped from maintaining that Ms. Skeeter's race is contrary to the Court's previous ruling." Plaintiff's Brief in Opposition at 3.

However, in the Fourth Circuit's unpublished opinion No. 83–2089 (an exhibit in the instant case), the court affirmed the lower court's directed verdict. While acknowledging that there was "some question as to whether Skeeter is even a member of a protected minority," the court affirmed the lower court's ruling because Skeeter had, by her own admission, failed to meet the minimum requirements for the contested job while the person who had been hired was fully qualified. Apparently, no determination of Ms. Skeeter's race was necessary in the prior action.

In the current action, the pleadings do seem to raise a fact question with regard to plaintiff's race. However, this Court finds that the issue that is relevant to plaintiff's claims is not whether she is actually black or white but whether plaintiff was discriminated against because she is white. Defendants claim that the individual defendants (whose actions would determine whether or not there was discrimination by both the individuals and the City) thought that plaintiff was black. This claim is supported by affidavits sworn by all the parties whose actions are in question in this suit. Defendants argue, convincingly, that the individual defendants could not or would not have discriminated against plaintiff because she is white, when they thought that she was a member of their own race—black.

Federal Rule of Civil Procedure 56(e) provides as follows:

When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

As the court in *Davis v. City of Portsmouth*, 579 F.Supp. 1205 (E.D.Va.1983) noted, "Once evidence has been submitted by the movant in a motion for summary judgment, it is the responsibility of the opposing party to introduce its own evidentiary material to the contrary." *Id.* at 1209, *citing Delong Corp. v. Raymond International, Inc.*, 622 F.2d 1135 (3d Cir. 1980). *See also, Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). In *Davis*, plaintiffs responded to defendants' motion for summary judgment but did not include supporting affidavits or other responsive material. They relied on the allegations in their pleadings and did not, as required by the rule, address defendants' denials of discriminatory conduct. The court granted defendants' summary judgment motion. *Davis*, 579 F.Supp. 1209.

The Fourth Circuit concurs in this interpretation of Federal Rule of Civil Procedure 56(e). *See e.g. Pocahontas Supreme Coal Co. v. Bethlehem Steel Corp.*, 828 F.2d 211, 215–16 (4th Cir.1987); *Kipps v. Ewell*, 538 F.2d 564 (4th Cir.1976) (the court dismissed plaintiff's Section 1983 action because the nonmoving party offered no specific averments showing a genuine

issue for trial); *Foy v. Norfolk and Western Ry. Co.*, 377 F.2d 243, 246 (4th Cir. 1967) ("Thus, under rule 56(e), once the Brotherhood had offered its motion, accompanied by affidavits which answered the plaintiff's allegations regarding his reasons for not resorting to his intra-union remedies, plaintiff was required to offer counter-affidavits, depositions or answers to interrogatories sufficient to show the existence of a dispute as to a material fact or have his bare allegations disregarded").

In the instant case, plaintiff has failed to properly rebut defendants' contention, supported by sworn affidavits, that the defendants accused of discriminating against plaintiff because she is white, actually *thought* she was black. Additionally, plaintiff herself admits that she is perceived as black by some people. Plaintiff's Response Brief at 2. According to Federal Rule of Civil Procedure 56(e), plaintiff cannot stand on the bare allegations in her pleadings but must provide some evidentiary material showing the existence of a disputed material fact. In this instance, the proof could have included evidence of specific facts indicating that actions or statements of defendants in some way reflected a belief that plaintiff was white. However, plaintiff has not done so. Plaintiff has offered nothing that puts defendants' subjective beliefs concerning plaintiff's race in dispute. Therefore, defendants' request for summary judgment will be granted with respect to any of the claims in this proceeding that require racial discrimination in order to state a cause of action.

## II. 42 U.S.C. § 1981

■ In order to prevail in a cause of action under 42 U.S.C. § 1981, plaintiff must show discrimination on account of race. Retaliatory discharge is actionable under this statute as well. *See Greenwood v. Ross*, 778 F.2d 448 (8th Cir.1985); *Manual on Employment Discrimination Law and Civil Rights Actions in the Federal Courts* § D1 at 5 (Judge Charles R. Richey) (1986). In accordance with the discussion above, plaintiff's racial discrimination claim under Section 1981 must fail. Plaintiff also appears to make out a claim of

retaliatory discharge which will be discussed below. Accordingly, summary judgment is GRANTED to all defendants with respect to plaintiff's Section 1981 racial discrimination claim.

## III. 42 U.S.C. § 1985(3)

Section 1985(3) was intended to provide a federal remedy for certain private conspiracies. *Griffin v. Breckenridge*, 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971). In discussing the type of conspiracy actionable under a 42 U.S.C. § 1985(3) claim, the Supreme Court set out the following:

> The constitutional shoals that would lie in the path of interpreting § 1985(3) as a general federal tort law can be avoided by giving full effect to the congressional purpose—by requiring, as an element of the cause of action, the kind of invidiously discriminatory motivation stressed by the sponsors of the limiting amendment.... The language requiring intent to deprive of *equal* protection, or *equal* privileges and immunities, means that there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action.

*Id.* at 102, 91 S.Ct. at 1798 (footnotes omitted).

Whether the individuals are accused of conspiring in their official capacities, thereby implicating the defendant City, or in their individual capacities, plaintiff's Section 1985(3) claim does not withstand defendant's Motion for Summary Judgment. As discussed above, these black defendants thought that plaintiff was also black. Thus, the possibility of the existence of the class-based, invidiously discriminatory animus that is a requirement under Section 1985(3), is precluded.

## IV. Title VII—42 U.S.C. § 2000e–2(a)(1)

Plaintiff claims defendants have violated 42 U.S.C. § 2000e–2(a)(1) which reads:

> (a) It shall be an unlawful employment practice for an employer—
>
> (1) to fail or refuse to hire or to discharge any individual, or otherwise to

discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's *race,* color, religion, sex, or national origin.

(Emphasis added.)

In *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), the Supreme Court stated that the complainant in a Title VII case has the initial burden of establishing a prima facie case of racial discrimination. *Id.* at 802, 93 S.Ct. at 1824. As discussed in relation to plaintiff's other statutory claims requiring a showing of racial discrimination to state a cause of action, plaintiff has failed to satisfactorily support her claims of racial discrimination, and, therefore, defendants' Motion for Summary Judgment is GRANTED with respect to Section 2000e–2(a)(1).

### V. Due Process Claims

■ Although not mentioned in her Complaint, plaintiff argues, in her Motion in Opposition to Summary Judgment, that she has been denied due process of law guaranteed by the fourteenth amendment. Plaintiff bases her argument on the contention that she had a property interest in her continued employment with the City of Norfolk and thus had a right to notice and an opportunity to be heard before being discharged. Plaintiff also claims liberty interest in her continued employment which was violated due to her discharge for insubordination.

### A. Plaintiff's Property Interest

Plaintiff cites extensively to the case of *Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed. 2d 494 (1985) (Brennan, J., concurring) for the proposition that an employee has a constitutional guarantee of a right to fair notice and an opportunity to be heard before being discharged by an employer. Plaintiff, however, ignores the threshold requirement, discussed in *Loudermill,* that a claimant must possess a property right in continued employment before any constitutional due process considerations are triggered. *Id.* at 538, 105 S.Ct. at 1491. The Court noted that such property interests are not created by the Constitution, but by "an independent source such as state law." *Loudermill,* 470 U.S. at 538, 105 S.Ct. at 1491, *quoting Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). Thus, the question becomes whether or not plaintiff in the instant case possessed a property interest in her employment with the City of Norfolk.

Defendants assert that plaintiff was, at all times, an "at will" employee of the City and, therefore, had no cognizable property interest in her continued employment. Defendants have submitted appropriate exhibits which fully support their following assertions. Plaintiff was originally employed as a senior clerk typist with a status of "special project". According to both the Norfolk City Code and the City Charter, special project employees serve "at the will of the city manager." On July 1, 1986, plaintiff's position was included by the City Council in the City's 1986–87 operating budget. This inclusion caused plaintiff's employment status to change from special project to permanent. On July 22, 1986, plaintiff was advised of her new permanent status in writing and, in the same correspondence, advised that she would be required to serve a six-month probationary period. The City Charter provides for this probationary period for permanent employees, "during which period a probationer may be discharged or reduced at the will of the city manager." Defendants' Exhibit 3 at 49. In August 1986, plaintiff's termination was requested by her superiors and approved by the City Manager.

Defendants assert that their exhibits clearly show plaintiff's employment status to be "at will". A property interest in employment is properly decided by reference to state law. *Bishop v. Wood,* 426 U.S. 341, 344, 96 S.Ct. 2074, 2077, 48 L.Ed. 2d 684 (1976). And under Virginia law, "at will" employment creates no property interest. *Norfolk Southern Ry. Co. v. Harris,* 190 Va. 966, 976, 59 S.E.2d 110, 114 (1950).

Plaintiff, in response, asserts without supporting authority that because her employment was for more than four years,

during which time she "was always treated ... as a permanent employee" her interest does constitute a property interest. Plaintiff also claims that her membership in the City's retirement program is indicative of her permanent status. She refers to Defendant's Exhibit No. 5 which is a portion of the City Code. The section plaintiff apparently refers to is Sec. 2–93, entitled "Membership in retirement system" which reads as follows:

No persons whose employment is authorized pursuant to this division, except substitute and special project employees who, immediately prior to their appointment in such capacity, were permanent members of the classified service and not on probation, shall be members of or entitled to any benefits in the employees' retirement system of the city, unless specifically provided by ordinance.

Defendants argue in their response that a mere four-year duration of employment does not create a tenured employment status. *See e.g., Howe v. Civil Service Commission*, 128 Conn. 35, 20 A.2d 397, 399 (1941); *Hilsenrad v. Miller*, 284 N.Y. 445, 31 N.E.2d 895, 898 (1940). Additionally, there appears to be more than one exception to the City provision which states that special project employees shall not be members of the City retirement system. Plaintiff offers no evidence that she either was a participant in the retirement system or that she could not have been both a participant and a special project employee under one of the apparent exceptions to City Code Sec. 2–93. Therefore, plaintiff has failed to create a question of fact as to the existence of a property interest with respect to her employment with the City.

### B. Plaintiff's Liberty Interest

■ Plaintiff asserts that because she was fired for insubordination, her liberty interest in her continued employment entitles her to due process safeguards. Because she did not receive a pretermination hearing of any kind, plaintiff claims her right to due process was violated.

In the case of *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), the Supreme Court discussed the deprivation of liberty that occurs when someone is not rehired. *Roth* involved a college professor who was hired for the fixed term of one academic year and not subsequently rehired. The Court stated:

The State, in declining to rehire the respondent, did not make any charge against him that might seriously damage his standing and associations in his community. It did not base the nonrenewal of his contract on a charge, for example, that he had been guilty of dishonesty, or immorality. Had it done so, this would be a different case. For "[w]here a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential."

*Roth*, 408 U.S. at 573, 92 S.Ct. at 2707, *quoting Wisconsin v. Constanineau*, 400 U.S. 433, 437, 91 S.Ct. 507, 510, 27 L.Ed.2d 515 (1971). The court in *Roth* concluded that it would stretch the concept too far "to suggest that a person is deprived of 'liberty' when he simply is not rehired in one job but remains as free as before to seek another." *Id.* at 575, 92 S.Ct. at 2708.

In *Bishop v. Wood*, 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976) (Brennan, J., dissenting), the court addressed the situation where a petitioner claimed a deprivation of liberty due to his firing on grounds including insubordination. *Id.* at 347, 350, 96 S.Ct. at 2078–79, 2080. There the court held that "the discharge [without a hearing] of a public employee whose position is terminable at the will of the employer when there is no public disclosure of the reasons for the discharge" does not constitute a deprivation of liberty of constitutional proportions. *Id.* at 348, 96 S.Ct. at 2079. The court reasoned that since the offending communication had not been made public, it could not form the basis for the petitioner's claim of impairment of his interest in his "good name, reputation, honor, or integrity." *Bishop*, 426 U.S. at 348, 96 S.Ct. at 2079, *quoting Wisconsin v. Constanineau*, 400 U.S. at 437, 91 S.Ct. at 510. In his dissent, Justice Brennan, joined by Justice Marshall, argued that although the court

limited its holding to situations where the reasons for discharge had not been publicly disclosed, "there is no reason to believe that respondents will not convey these actual reasons to petitioner's prospective employers." *Id.* at 352, 96 S.Ct. at 2081.

In the instant case, plaintiff makes no allegation that the reasons for her termination from the City of Norfolk have been made public or improperly disclosed. She does not even argue along the lines of the dissent in *Bishop* that the City may disclose this information in the future. Plaintiff bases her claim of a deprivation of her liberty interest on the contention that *she* "must 'publish' this charge to each subsequent employer in [sic] which she interviews." Plaintiff's Brief in Opposition at 16. The majority's holding in *Bishop* requires the conclusion that plaintiff's claimed liberty interest is not sufficiently threatened in this case to warrant due process protections. *See also Fuller v. Laurens County School District No. 56*, 563 F.2d 137, 141 (4th Cir.1977) (private communication by school authorities of unfavorable recommendation cannot properly form the basis for a claim of impairment of character with regard to liberty interest).

In accordance with the above discussion, plaintiff's due process claims do not withstand defendants' Motion for Summary Judgment and therefore defendants' Motion is GRANTED.

### VI. 42 U.S.C. § 2000e–3

█ In her Complaint, plaintiff alleges that defendants have violated 42 U.S.C. § 2000e–3. This section, a part of Title VII, addresses reprisals or retaliation because of a plaintiff's assertion of Title VII rights or participation in the EEO process. *Manual on Employment Discrimination Law and Civil Rights Actions in the Federal Courts* § A at 10 (Judge Charles R. Richey) (1986). To establish a prima facie showing of retaliation, a plaintiff must establish:

1) That she engaged in a statutorily protected activity; 2) that the employer took an adverse personnel action; and 3) that a causal connection existed between the two.

*Mitchell v. Baldrige*, 759 F.2d 80, 86 (D.C. Cir.1985).

█ Reading plaintiff's Complaint and Brief in the most generous manner possible, there appear to be only two incidents that might provide the basis for a claim under Section 2000e–3. In paragraph 24 of her Complaint, plaintiff alleges that her transfer to the Huntersville Center was "merely in retaliation for Skeeter seeking to assert her rights in the initial grievance." Even if participation in the City grievance process was the type of assertion of Title VII rights covered by this statute, plaintiff's claim fails because it is time-barred. The offending transfer occurred on November 1, 1985. In order to be actionable under Title VII, a charge must be filed within 180 days after the alleged unlawful employment practice. 42 U.S.C. § 2000e–5(e). Plaintiff's first EEOC charge was filed on May 16, 1986. Individual defendant's Exhibits 5, 6 and 7. Therefore, any incidents occurring prior to November 16, 1985, as did the Huntersville transfer, are time-barred. Plaintiff's assertion that the appropriate charge filing period is 300 days is incorrect. In order to qualify for the extended 300–day filing limitation period, there must be involved a state or local agency which is designated under 29 C.F.R. §§ 1601.70–80 as a "706 agency". *See e.g., Mohasco Corp. v. Silver*, 447 U.S. 807, 820–21, 100 S.Ct. 2486, 2494–95, 65 L.Ed.2d 532 (1980). The City of Norfolk has no such agency. Additionally, in light of this Court's determination that plaintiff's claims of racial discrimination are not substantiated sufficiently to survive a motion for summary judgment, the possibility of the existence of a "continuing" pattern of discrimination that would preclude application of any statutes of limitation is foreclosed.

█ The second incident upon which plaintiff might possibly base her retaliation claim is her discharge. Although plaintiff does not allege in her Complaint that this action was retaliatory, she states the following in her Brief in Opposition to defend-

ant's Motion for Summary Judgment: "The evidence at trial will show that upon receiving notification of an EEOC charge being filed on May 16, 1986, the named defendants stepped up their campaign of discrimination against Skeeter, eventually leading to her ultimate termination." While an assertion in a supporting brief does not constitute "evidence" to be considered in a motion for summary judgment, plaintiff did allege actionable retaliation in connection with her discharge in her underlying amended EEOC charge number 03786 0688. In view of plaintiff's minimal burden in establishing a prima facie case under Section 2000e–3 and in view of the policy that the party opposing a motion for summary judgment is to be given the benefit of all reasonable doubts in determining whether a genuine face issue exists, Wright, *Law of Federal Courts*, § 99 (1976), this Court finds that the Motion for Summary Judgment cannot be granted with respect to all defendants on this ground of the instant case.

However, even the most liberal reading of the Complaint shows that only defendants Harrison and Cuffee (and possibly the City, by implication) were involved in the allegedly retaliatory discharge. Defendant Crawley is not mentioned in the relevant portion of the Complaint. And plaintiff herself alleges that defendant Kearney's participation was obtained solely by threats on the part of Harrison and Cuffee to terminate Kearney if she did not cooperate. Thus Kearney's actions could not have been in retaliation against plaintiff. Therefore, summary judgment is GRANTED with regard to plaintiff's Section 2000e–3 claim as to defendants Kearney and Crawley in both their individual and official capacities. Additionally, summary judgment is GRANTED on this count with respect to defendants Harrison and Cuffee in their individual capacities. (See discussion below concluding that individual defendants are not proper defendants in their individual capacities under any of the Title VII claims.) Defendant's Motion for Summary Judgment is DENIED on this count with respect to the City and defendants Harrison and Cuffee in their official capacities.

*VII. Title VII Claims Against Individual Defendants*

The individual defendants assert that plaintiff's Title VII claims against them are barred because plaintiff did not file a charge naming the individuals as respondents with the EEOC. Plaintiff argues that each of the individual defendants either were specifically named in the narrative portion of the charge or "should have reasonably anticipated being sued." Plaintiff's Brief in Opposition at 9. Thus, according to plaintiff, this Court has subject matter jurisdiction over the individual defendants with regard to plaintiff's Title VII claims.

In order to satisfy the jurisdictional prerequisites of a Title VII suit, a charge must first be filed with the EEOC against the party sued. *Mickel v. South Carolina State Employment Serv.*, 377 F.2d 239 (4th Cir.1967). This requirement serves to notify the charged party and to encourage conciliation efforts, thereby bringing about the Act's primary goal of securing voluntary compliance with the law. *Dickey v. Greene*, 710 F.2d 1003 (4th Cir.1983), *rev'd on other grounds*, 729 F.2d 957 (1984), *quoting Bowe v. Colgate–Palmolive Co.*, 416 F.2d 711 (7th Cir.1969). *See also* 42 U.S.C. §§ 2000e–5(b) and (e) (requiring that notice of the charge "be served upon the person against whom such charge is made.").

When the defendants in a Title VII action were not the respondents in the underlying EEOC charge, the circuit courts differ in their approaches to determining whether the defendants received notice sufficient to meet the Title VII requirements. For example, in the Ninth Circuit a claimant is allowed to proceed against a defendant who could "reasonably anticipate being sued," even though that defendant was not specifically mentioned in the EEOC charge. *Chung v. Pomona Valley Community Hosp.*, 667 F.2d 788 (9th Cir.1982).

The leading case on point in the Fourth Circuit is *Dickey v. Greene*, 710 F.2d 1003 (4th Cir.1983), *rev'd on other grounds*, 729

F.2d 957 (1984) in which the court applied a much stricter standard for determining whether a defendant had received notice from the underlying EEOC charge. In *Dickey*, the plaintiff named the agency with which she had been employed and not the individual defendants as respondents in her EEOC charge. She named the individual defendants in her Title VII suit. Of three individual defendants, one had been named in the narrative portion of the EEOC charge. *Id.* at 1005. A divided court dismissed plaintiff's claims against all the individual defendants holding that merely referring to an individual by name in the narrative portion of the EEOC charge (or not specifically referring to them at all) was not sufficient notice under the statute to make that individual subject to a Title VII suit. *Id.* at 1006. Significantly, the court noted that there was nothing in the record to suggest that the individual defendant named in the narrative portion of the EEOC charge was ever involved in any conciliation efforts. *Id.* The court also mentioned that there could be circumstances that would warrant exceptions to the statutory requirements, although those circumstances were not present in *Dickey.* *Id.*

The facts of *Dickey* are similar to those of the instant case. In both cases plaintiffs named their employing entity as respondent in the EEOC charges and then named individuals acting in their official capacities as additional defendants in the Title VII suits. In both cases there were individual defendants who were named in the narrative portion of the EEOC charge as well as defendants not specifically mentioned in the EEOC charge.

Although plaintiff urges this Court to adopt the "reasonably anticipate being sued" standard, this Court is bound by precedent in the Fourth Circuit; the *Dickey* case. And even though, as plaintiff points out, *Dickey* was later reversed and remanded following a rehearing before the circuit judges sitting *en banc*, it is still controlling in the present case. *See Dickey v. Greene*, 729 F.2d 957 (4th Cir.1984) (Hall, J., dissenting). *See also EEOC v. Newtown Inn Associates*, 647 F.Supp. 957 (E.D.

Va.1986) (distinguished from *Dickey* because the defendants had actual notice and participated in the conciliation process); *EEOC v. Charleston Elec. Joint Apprenticeship*, 587 F.Supp. 528 (S.D.W.Va.1984) (distinguished facts from *Dickey* because defendants were actually notified of the claims involved and had the opportunity to participate in conciliation negotiations). In the rehearing of *Dickey*, the court did not reach the merits of the case. Instead, the court remanded the case for further proceedings because the EEOC complaint had not been part of the record and thus had not been considered by the magistrate or by the district court. *Id.* at 959. In light of that omission, the case was remanded to the district court for further proceedings. *Id.* at 959. Thus, the first *Dickey* decision is still controlling with respect to the issues presented in the instant case.

In this case, the individual defendants were not named as respondents in the underlying EEOC charge. As discussed above, the fact that Harrison and Kearney were named in the narrative portion of the charge does not, taken alone, serve as sufficient notice for Title VII purposes. In addition, there is nothing in the record to show that the individual defendants were involved in any conciliation process with the instant plaintiff. Accordingly, defendants' Motion for Summary Judgment with respect to plaintiff's Title VII claims against the defendants Harrison, Crawley, Cuffee and Kearney, in their individual capacities, is GRANTED.

### VIII. Retaliatory Discharge

The sole issue remaining in this case involves plaintiff's allegedly retaliatory discharge. If plaintiff can establish the necessary elements, she may be able to state a claim under Section 1983. *See e.g., Greenwood v. Ross*, 778 F.2d 448, 455 (8th Cir. 1985) and Section 2000e–3(a) for defendants' allegedly unlawful discharge in retaliation for plaintiff's filing of EEOC charges. An action under Section 1983 lies when any person, acting under color of state law, deprives another of his federal constitutional rights. *See Mitchum v. Foster*, 407 U.S.

225, 238–39, 92 S.Ct. 2151, 2159–60, 32 L.Ed.2d 705 (1972). In light of the findings of this Court thus far, the only possible deprivation of plaintiff's constitutional rights that remains actionable under Section 1983 is her allegedly retaliatory discharge. Because plaintiff alleges such an unlawful discharge, and because defendants have not offered any affidavits or evidence to establish the lack of a genuine issue of fact with respect to the discharge, all the defendants cannot prevail in their Motion for Summary Judgment.

However, as stated above, defendants Crawley and Kearney were not implicated by plaintiff in connection with the allegedly unlawful activities surrounding plaintiff's discharge. Therefore, the Motion for Summary Judgment is GRANTED, in total, with respect to defendants Crawley and Kearney, in both their individual and official capacities.

The Motion for Summary Judgment on behalf of defendants Harrison, Cuffee and the City of Norfolk is DENIED with respect to plaintiff's claim of a retaliatory discharge violating Sections 1981, 1983 and 2000e–3(a), in accordance with this Order.

The Clerk is DIRECTED to send a copy of this Order to counsel for the plaintiff and defendants.

IT IS SO ORDERED.