**Dion McCARTHY, Plaintiff–Appellant,**

v.

**KEMPER LIFE INSURANCE COMPANIES, Defendant–Appellee.**

**No. 90–1082.**

United States Court of Appeals, Seventh Circuit.

Argued Nov. 1, 1990.

Decided Feb. 6, 1991.

Donald G. Weiland, Decker & Associates, Chicago, Ill., for plaintiff-appellant.

Paul R. Garry, Gail A. Chaney, and Gwen V. Carroll, Katten, Muchin & Zavis, Chicago, Ill., for defendant-appellee.

Before CUMMINGS, FLAUM and RIPPLE, Circuit Judges.

CUMMINGS, Circuit Judge.

In June 1987 plaintiff Dion McCarthy filed a four-count complaint against defendant Kemper Life Insurance Companies alleging that he was discharged in violation of the Civil Rights Act of 1866 (42 U.S.C. § 1981) and Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e et seq.), and in breach of a settlement contract. Plaintiff appeals from the district court's summary judgment in favor of defendant as to Counts I, II, and IV of his complaint. 735 F.Supp. 251. He does not allege error in the district court's earlier dismissal of Count III which had alleged that his termination constituted a retaliatory discharge in contravention of Illinois public policy.

In July of 1981, Kemper hired McCarthy, a black male, as a trainee for the position of "Regional Director of Agency" (RDA). In December of 1983 McCarthy was promoted to that position. As an RDA, McCarthy served as liaison between Kemper and independent insurance agents who sold Kemper products. Every two weeks RDAs must travel to their assigned territories to recruit new agents, meet with current agents and terminate non-productive agents. McCarthy's territory consisted of Virginia, Pennsylvania, Maryland, the District of Columbia and West Virginia.

In April 1985, McCarthy filed a charge of discrimination against Kemper with the Equal Employment Opportunity Commission (EEOC) claiming *inter alia* that Kemper was paying him less than white RDAs. Without admitting liability, Kemper settled the EEOC charge in July 1985 by compensating McCarthy for the alleged disparity and raising his annual salary to $31,000.

After the EEOC settlement, McCarthy was assigned to work under supervisor Larry Luett. Luett first reported that McCarthy was not performing to his fullest capability, but later he believed that McCarthy was improving.

The parties predictably dispute the events preceding McCarthy's discharge in January 1986. Kemper claims that it discharged McCarthy solely because it found that McCarthy submitted numerous fraudulent expense reports in 1985. Kemper discovered the expense account fraud after McCarthy made a trip to Richmond, Virginia, in December 1985. McCarthy had wanted to make a side trip from Richmond to Greensboro. He intended to sell Kemper insurance products to a church group there. Luett advised McCarthy before his trip not to go to Greensboro unless he kept his Richmond appointments. McCarthy did not keep any of his three Richmond appointments but did proceed to Greensboro. After this trip, McCarthy billed Kemper for expenses of his Greensboro visit, though he had been warned that he would bear the expenses of any detour from Richmond. The following week a Richmond agent phoned Luett to ask about McCarthy's failure to show up for their scheduled meeting. Luett phoned other Richmond agents and found that McCarthy had missed all three of his appointments on December 13th and four or five other appointments that week. He reviewed McCarthy's expense records for the Richmond trip and submitted those records to Vince Inserra, Kemper's Director of Internal Security, for further investigation. Luett and Inserra discovered that McCarthy had charged to Kemper his Richmond to Greensboro airfare, a rental car in Greensboro and a dinner in Greensboro. On December 20, 1985, Kemper suspended McCarthy with pay pending further investigation.

Luett asked Inserra to review McCarthy's expense account for the entire year of 1985 to see if other improprieties existed. Inserra reported in the first week of January 1986 that McCarthy had falsified many

expense reports in the past. Among other things, McCarthy had rented cars for entire weekends without any business purpose and had submitted inflated hotel bills. Jim Bickler, Kemper Vice-President of Sales and Marketing, terminated McCarthy on January 7, 1986.

McCarthy, without denying that he defrauded Kemper on the numerous occasions identified in Inserra's final report, argues that he was fired because of his race. McCarthy testified at his deposition that he was the target of racial and ethnic jokes and remarks at Kemper. McCarthy believes that Kemper selectively investigated his expense account records and that Kemper fired him in retaliation for the favorable settlement he received in 1985 as a result of his EEOC complaint.

In view of McCarthy's expense fraud, the district court held as to Count I that his Title VII claims were not acceptable, as to Count II Kemper's decision to terminate him was for cause and not retaliatory under Section 1981, and as to Count IV the agreement settling his EEOC charge was not violated since he was discharged for a legitimate nondiscriminatory reason. Consequently summary judgment was entered for Kemper. We affirm.

*Title VII claim*

■ The gravamen of Count I of the complaint is that plaintiff was discharged in violation of 42 U.S.C. § 2000e(2) of Title VII of the Civil Rights Act of 1964 because he was black. Plaintiff has disavowed the indirect method of proof of race discrimination sanctioned by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) (see Br. 19, 26), and instead relies on direct evidence that his discharge was caused by racial discrimination (Br. 19, 20, 25, 26, 29, 30). In a direct evidence case, plaintiff initially must prove "through direct evidence that the employ-

ment decision at issue was based upon an impermissible factor." *Randle v. LaSalle Telecommunications, Inc.*, 876 F.2d 563, 568 (7th Cir.1989). Once the *prima facie* case has been made, "the defendant must respond by proving by a preponderance of the evidence that it would have made the same employment decision even if it had not taken the impermissible factor into account." *Id.* at 569.[1]

■ Plaintiff failed to establish a *prima facie* case of discrimination. McCarthy relies on stereotyped anti-black remarks made by fellow employees to show racial animus. However, as explained in the plurality opinion in *Price Waterhouse v. Hopkins*, 490 U.S. 228, 109 S.Ct. 1775, 1791, 104 L.Ed.2d 268 (1989):

> [r]emarks at work that are based on sex [here race] stereotypes do not inevitably prove that gender played a part in a particular employment decision. The plaintiff must show that the employer actually relied on her gender [here race] in making its decision.

Justice O'Connor's concurring opinion expanded on this *Hopkins* theme by stating:

> Stray remarks in the work place ... cannot justify requiring the employer to prove that its ... decisions were based on legitimate criteria. Nor can statements by non-decision makers or statements by decision makers unrelated to the decisional process itself suffice to satisfy the plaintiff's burden in this regard.

109 S.Ct. at 1804; see also *Smith v. Firestone Tire and Rubber Co.*, 875 F.2d 1325, 1330 (7th Cir.1989). Unless the remarks upon which plaintiff relies were related to the employment decision in question, they cannot be evidence of a discriminatory dis-

1. McCarthy points out that the district court wrongly obligated him to prove that "but for" the alleged discrimination, he would not have been dismissed. It is true that the plaintiff need not show "but for" causation to prevail in a Title VII case. *Price Waterhouse v. Hopkins*, 490 U.S. 228, 109 S.Ct. 1775, 1785–1786, 104 L.Ed.2d 268 (1989). Even under the proper *Price Water-* *house* standard, however, the plaintiff was not entitled to survive Kemper's summary judgment motion because he did not show that Kemper relied on his race in deciding to discharge him. Of course, this Court can affirm on any ground that is supported by the record. *Sally Beauty Co. v. Nexxus Products, Co.*, 801 F.2d 1001, 1004–1005 (7th Cir.1986).

charge.[2]

■ The bulk of the remarks McCarthy recalls are of marginal relevance to a Title VII inquiry because they were not made by decision makers. *La Montagne v. American Convenience Products, Inc.*, 750 F.2d 1405, 1412 (7th Cir.1984). For example, one of McCarthy's co-workers prepared a "satire" announcement about McCarthy's promotion to RDA. In this announcement, which the writer circulated to other RDAs, McCarthy was the target of several racial and ethnic slurs. While racial slurs are always deplorable, the article[3] is not evidence of a discriminatory employment decision. No Kemper decision maker created the announcement. Also, the incident preceded McCarthy's firing by two years.

McCarthy noted in his affidavit opposing summary judgment some possibly racist remarks that he alleges were made by superiors involved in his firing. Plaintiff relies heavily on comments supposedly made by Jim Bickler, the Kemper vice-president who fired McCarthy, and Larry Luett, McCarthy's immediate supervisor at the time of McCarthy's discharge. McCarthy claims that Bickler told him, "Your days are numbered here," and that Luett said on a separate occasion, "You piss some of the boys upstairs off." Even if these comments were made, both were unrelated to McCarthy's firing. They came on the heels of the EEOC settlement and referred to the surprise of some Kemper officers that McCarthy had obtained a favorable settlement.

■ As the district judge pointed out, McCarthy's claims with respect to the Luett and Bickler statements were largely unsupported allegations. At his deposition, McCarthy conceded that he himself made the statement "I feel like my days are numbered here" to Larry Luett. R. Item 57, Exh. 8 at 106. When asked if Bickler had made any comments to him, McCarthy replied that he could not remember any. R. Item 65 at 5. A party opposing summary judgment cannot rest on the pleadings and must affirmatively set forth facts that show that there is a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–326, 106 S.Ct. 2548, 2552–2554, 91 L.Ed.2d 265 (1986). McCarthy cannot effectively oppose a motion for summary judgment by contradicting his own deposition testimony. *Miller v. A.H. Robins Co.*, 766 F.2d 1102, 1104 (7th Cir.1985).

In sum, while plaintiff is basing his Title VII case on direct evidence of a racially motivated discharge, no such evidence was adduced. McCarthy did not establish facts from which a reasonable juror could conclude that the impermissible factor of race played a role in his firing.[4]

■ Even if McCarthy had been able to make a *prima facie* case of discrimination, the record convincingly shows that he was fired because he committed expense account fraud and not because he is black. The district court order granting summary judgment for Kemper stated that McCarthy "admits engaging in a protracted expense account fraud against Kemper." R. Item 75 at 1. Before this Court McCarthy similarly does not deny the findings contained in Inserra's final report summarizing the inconsistencies in McCarthy's 1985 expense account records, except by reference to his response to defendant's motion for summary judgment. There McCarthy's

---

2. *Hybert v. Hearst Corp.*, 900 F.2d 1050 (7th Cir.1990), an age discrimination case cited by plaintiff at the oral argument, does not help his cause for there Hearst's sales manager gave *"direct evidence"* that some people in their sixties were going to be replaced by younger salesmen of magazine advertising space. *Id.* at 1053.

3. Kemper does not deny that the article existed.

4. We do not suggest that race-based remarks in the workplace never can be convincing evidence of a discriminatory employment decision. The plurality opinion in *Price Waterhouse* held only that stray remarks "do not *inevitably* prove that gender [here race] played a part in a particular employment decision." 109 S.Ct. at 1791 (emphasis supplied). The plurality opinion also carefully noted that it did not mean to "suggest a limitation of the possible ways of proving that stereotyping played a motivating role in an employment decision." *Id.* In this case the comments in the workplace were wholly unrelated to the decision to fire McCarthy, which was motivated by the intervening event of the discovery of McCarthy's expense account fraud. Other cases may present closer questions.

lawyer states baldly, "Plaintiff was not involved in expense account fraud." R. Item 56, par. 39. A statement of such generality, not made by McCarthy, cannot suffice to create a genuine issue of material fact. *Davis v. City of Chicago,* 841 F.2d 186, 189 (7th Cir.1988).

■ Instead of disputing the expense account fraud, McCarthy argues that Kemper unfairly targeted him for investigation because he is black. To this end, McCarthy does dispute some of the facts surrounding the Greensboro trip and his expense record for the trip. Even if we construe all reasonable inferences in McCarthy's favor, as we are obligated to do when reviewing a grant of summary judgment, we cannot say that Kemper singled McCarthy out for investigation. Kemper learned from clients that McCarthy had missed scheduled appointments in Richmond. This led to the investigation of McCarthy's Greensboro expense reports and subsequently to an investigation of all of McCarthy's 1985 expense reports. It was only after Inserra found that McCarthy had engaged in fraud on repeated occasions throughout 1985 that Kemper fired McCarthy. Kemper had a legitimate, nondiscriminatory reason to investigate McCarthy. Upon finding that he had committed expense account fraud, not merely after the Greensboro trip but at numerous times during the year, Kemper terminated McCarthy. Undisputed evidence establishes that Kemper similarly terminated a white RDA who had been caught submitting inflated expense reports in 1983. In these circumstances, McCarthy has failed to create any genuine issue of material fact with respect to the issue of whether Kemper treated the investigation of his expense account fraud differently from that of other, white RDAs.

McCarthy simply did not produce evidence that Kemper considered the impermissible factor of race when it decided to fire him. Furthermore, given McCarthy's falsification of expense records, Kemper had a valid, nondiscriminatory reason to fire McCarthy. That factor, standing alone, would have induced Kemper to make the same decision to terminate McCarthy.

The district court properly granted summary judgment to Kemper on McCarthy's Title VII count.

*Section 1981 claim*

■ McCarthy also alleges that his termination, which he characterizes as Kemper's retaliation for the EEOC settlement, is proof that Kemper entered into the settlement agreement with impermissible discriminatory intent. The district court ruled that McCarthy "failed to place any evidence of retaliation beside the strong evidence of discharge for fraud." R. Item 75 at 4. As previously shown, this was a correct assessment of McCarthy's case.

■ *Patterson v. McLean Credit Union,* 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989), bars Count II because "Section 1981 cannot be construed as a general proscription of racial discrimination in all aspects of contract relations for it expressly prohibits discrimination only in the making and enforcement of contracts." 109 S.Ct. at 2372. McCarthy's discharge was not retaliatory and thus is not evidence that Kemper originally entered into the settlement agreement with discriminatory intent. To the extent that McCarthy's complaint tries to construe allegations about racial harassment as elements of a Section 1981 claim, it must fail. As Justice Kennedy elaborated in the *Patterson* majority opinion, Section 1981 does not extend to "postformation conduct by the employer relating to the terms and conditions of continuing employment." 109 S.Ct. at 2374.

*Breach of EEOC settlement agreement*

■ Plaintiff halfheartedly pursues his Count IV allegation that Kemper breached the EEOC settlement agreement. His principal brief merely states "Without belaboring the previous arguments, plaintiff also seeks reversal of the judgment related to Count IV" (Br. 33). McCarthy does not raise the issue in his reply brief. The district court disposed of Count IV in a footnote to its opinion, stating "Kemper's discharge of McCarthy was for a legitimate and nondiscriminatory reason, and, as such, did not violate the settlement agreement." R. Item 75 at 5, n. 1. We agree with the

 

district court that McCarthy was discharged in view of his "protracted scheme of expense account fraud." R. Item 75 at 1. Therefore summary judgment was also properly granted with respect to the final count of the complaint.

Judgment affirmed.