Donald **TEALL**, Plaintiff,

v.

**CITY OF CHICAGO**, Defendant.

No. 96 C 3638.

United States District Court,
N.D. Illinois,
Eastern Division.

Dec. 3, 1997.

Terrance Anthony Norton, Chicago, IL, for Plaintiff.

Jennifer Anne Naber, Laner, Muchin, Dombrow, Becker, Levin & Tominberg, Ltd., Chicago, IL, Barbara Louise Anderson, City of Chicago, Dept. of Law, Chicago, IL, Patricia Therese Bergeson, Corp. Counsel City of Chicago, Chicago, IL, Susan S. Sher, Joseph Robert Lipton, City of Chicago, Law Dept., Chicago, IL, for Defendant.

## MEMORANDUM OPINION AND ORDER

BUCKLO, District Judge.

The plaintiff, Donald Teall, filed suit against the defendant, the City of Chicago ("City"), under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.* Mr. Teall claims he was fired from his job in the Chicago Police Department due to his age. The City moves for summary judgment. For the following reasons, the motion is denied.

### Background

For twenty years, Mr. Teall was employed by the City of Chicago's Department of Streets and Sanitation. In the summer of 1994, at age 46, Mr. Teall resigned from the Department of Streets and Sanitation to become a probationary police officer with the Chicago Police Department. After approximately six months of academic and firearm training, Mr. Teall began his field training in January, 1995, at the Sixteenth Police District. Field training consists of at least ten weeks of training as an active police officer on patrol. A probationary police officer ("PPO") is trained and evaluated by either a patrol specialist or other experienced officer. PPOs receive written evaluations, titled Probationary Police Officer Performance Evaluations ("PPOPE"), every two weeks beginning at the end of their fourth week of training.

The PPOPE summarizes the performance of the PPO in eleven areas.

Mr. Teall was evaluated by three separate officers during his tenure as a probationary police officer. The first officer, Stephen Sodergren, evaluated Mr. Teall after his fourth and sixth weeks of training. Officer. Sodergren's evaluations of Mr. Teall were poor. Mr. Teall blames these evaluations on Officer Sodergren's alleged age bias. According to Mr. Teall, Officer Sodergren constantly made comments indicating he thought Mr. Teall was taking a job away from younger individuals. Mr. Teall, feeling harassed by Officer Sodergren, requested a different training officer. Officer Leroy Ladendorf was assigned as Mr. Teall's training officer and completed an evaluation of Mr. Teall after his eighth week. Although Officer Ladendorf did not field qualify Mr. Teall, his PPOPE indicates Mr. Teall is intelligent and will make a good police officer.

Mr. Teall's fourth PPOPE was completed by Officer William Vick after ten weeks of field training. While Officer Vick also did not field qualify Mr. Teall, his PPOPE indicates Mr. Teall will be a good police officer with further training. At the end of his tenth week of training, the Sixteenth District Commander recommended additional field training for Mr. Teall. This training was supervised by Officer Ladendorf. According to Mr. Teall, at the end of his twelfth week of training, Officer Ladendorf informed him that he was field qualified. The numerical listing on Mr. Teall's fifth PPOPE indicated he was field qualified in some areas. Mr. Teall signed the PPOPE. Mr. Teall states that at the time he signed the PPOPE it did not include the final written page of comments currently attached, which indicates Mr. Teall needs further training.

Based upon a review of Mr. Teall's PPOPE forms and interviews with individuals in the Sixteenth District, Patrol Specialist Liaison Daniel Guiney recommended that Mr. Teall's performance be reviewed by the Field Evaluation Review Board. The Review Board consists of supervisors from the Training Division and Personnel Division, a patrol specialist, and a patrol specialist liaison. The Review Board make recommenda-

tions regarding a PPO as to whether further training is warranted, counseling is necessary, or termination is appropriate. In addition to looking at Mr. Teall's relevant written materials, the Review Board interviewed Officer Peter Wenger, a Sergeant in the Sixteenth District, Officer Sodergren, Officer Ladendorf, Officer Vick, and Mr. Teall. After listening to all of the testimony and reviewing all of the forms, the Review Board decided Mr. Teall should be separated from the Chicago Police Department. This recommendation was accepted by Superintendent Matt L. Rodriguez and Mr. Teall was discharged on June 21, 1995. This suit followed.

### Motion to Strike

█ The City moves to strike portions of Mr. Teall's Rule 12(N) response, statement of additional facts, affidavits, and response memorandum. Local District Rule 12(N) requires a concise response to a movant's statement of facts including, in the case of denials, "specific references to the affidavits, parts of the record, and other supporting materials relied upon." The Seventh Circuit has upheld the strict application of Rule 12(N). *Schulz v. Serfilco, Ltd.*, 965 F.2d 516, 519 (7th Cir.1992). Part of Mr. Teall's Rule 12(N) statement is invalid since it includes mere denials without reference to supporting materials. Accordingly, paragraphs 57, 58, 59, 67, 68, 76f, 80g, 80i, 80q, and 103 will be struck and the information in the City's Rule 12(M) statement is deemed admitted.

█ The City moves to strike other portions of Mr. Teall's Rule 12(N) response as either unsupported by the evidence cited or argumentative. In many of the paragraphs the City finds objectionable, Mr. Teall admits particular comments were made, but denies their truth. This is not an improper response to a Rule 12(M) statement of facts. Still, some of Mr. Teall's responses are argumentative. Arguments should be reserved for memoranda. Accordingly, the argumentative material in response paragraphs 5, 20, 28, 31, 32, 52, 65, and 66 will be struck. The City also argues that Mr. Teall's Rule 12(N) statement of additional facts and corresponding affidavits includes inadmissible hearsay

statements. However, the substantive statement the City finds objectionable is admissible as an admission of a party's agent, and thus, is proper. Whether Mr. Teall's statement to his wife is admissible under another exception to the hearsay rule need not be determined at this point.

▮ Finally, the City moves to strike portions of Mr. Teall's response brief because Mr. Teall cites to direct references to deposition transcripts and exhibits instead of citing to his Rule 12(N) statement. I do not believe this indiscretion warrants the City's request to strike numerous portions of Mr. Teall's memorandum. Accordingly, it is denied.

### Hostile Work Environment

▮ Mr. Teall, in his response to the City's motion for summary judgment, raises for the first time a claim that the City created a hostile working environment in violation of the ADEA. Mr. Teall did not raise this claim in his complaint and has not amended his complaint to include a hostile work environment claim. He also did not include a hostile work environment claim in his EEOC complaint. (Def.12(M) Reply, Ex. 8). It is well settled in the Seventh Circuit that a plaintiff cannot amend his complaint with a later filed brief. *Auston v. Schubnell*, 116 F.3d 251, 255 (7th Cir.1997); *Harrell v. United States*, 13 F.3d 232, 236 (7th Cir.1993). Accordingly, Mr. Teall's hostile work environment claim is not properly before this court.

### Age Discrimination

▮ Mr. Teall argues that he was discriminated against due to his age when he was fired by the City. The ADEA makes it unlawful for an employer to fire an employee based on age. 29 U.S.C. § 623(a). Age discrimination may be proven either through the presentation of direct evidence or by the indirect burden-shifting method of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). "Under either method, summary judgment is improper if the plaintiff offers evidence from which

an inference of age discrimination may be drawn." *Fuka v. Thomson Consumer Elec.*, 82 F.3d 1397, 1402–03 (7th Cir.1996).

▮ Under the direct method of proving age discrimination, the plaintiff may offer either direct or circumstantial evidence of discrimination. *Troupe v. May Dep't Stores Co.*, 20 F.3d 734, 736 (7th Cir.1994). The Seventh Circuit has noted three types of circumstantial evidence of intentional discrimination:

> The first consists of suspicious timing, ambiguous statements oral or written, behavior toward or comments directed at other employees in the protected group, and other bits and pieces from which an inference of discriminatory intent might be drawn....Second is evidence, whether or not rigorously statistical, that employees similarly situated to the plaintiff other than in the characteristic...on which an employer is forbidden to base a difference in treatment received systematically better treatment....And third is evidence that the plaintiff was qualified for the job in question but passed over in favor of (or replaced by) a person not having the forbidden characteristic and that the employer's stated reason for the difference in treatment is unworthy of belief, a mere pretext for discrimination....Each type of evidence is sufficient by itself...to support a judgment for the plaintiff; or they can be used together.

*Id.* at 736.[1] Mr. Teall presents an abundance of evidence that Officer Sodergren was prejudiced against him because of his age. According to Mr. Teall, Officer Sodergren laughed after learning Mr. Teall's age and said to Mr. Teall, "I don't know what an old guy like you wants with this job...I don't know why you would leave your other job and take this job from a younger guy." (Teall Dep. at 154). Officer Sodergren told Mr. Teall that being a police officer was "a younger guy's job." *Id.* Mr. Teall states that Officer Sodergren would make comments about Mr. Teall's age on a daily basis and told Mr. Teall, "No, you'll never be a

---

**1.** The third type of evidence is "substantially the same" as that required under the indirect burden-shifting *McDonnell Douglas* method. *Huff v. UARCO, Inc.*, 122 F.3d 374, 380 (7th Cir.1997).

police officer . . . they don't want old fucks like you." (Teall Dep. at 165). Officer Sodergren told Mr. Teall he should quit the force and go back to working at Streets and Sanitation. Mr. Teall also alleges that Officer Sodergren would throw Mr. Teall's assignment sheets on the floor and then ask Mr. Teall if he was "too old to go down and get it." (Teall Dep. at 166).

Additionally, Officer Sodergren told Mr. Teall that he held Mr. Teall's job in his hands and he could give the job to Mr. Teall or take it away from him. (Teall Dep. at 155–56). Officer Sodergren informed Mr. Teall that he had gotten another officer fired. (Teall Dep. at 202). Taken as a whole, Officer Sodergren's comments are strong circumstantial evidence of intentional discrimination based on Mr. Teall's age. Since, according to Officer Sodergren, he knew how to get someone fired, a rational factfinder could conclude that Officer Sodergren was aware that poor marks on the PPOPE were an effective method to derail Mr. Teall's career. Officer Sodergren evaluated Mr. Teall twice in PPOPE forms and was uniformly negative in his assessment of Mr. Teall on both occasions. These PPOPE forms were presented to the Review Board when they considered Mr. Teall's case.

Officer Sodergren's evaluation conflicts with those of Officers Ladendorf and Vick. Officer Ladendorf, in Mr. Teall's third evaluation, concluded that Mr. Teall was intelligent, performing his duties properly, and was likely to be a good police officer. Officer Vick also wrote that Mr. Teall would be a good police officer. While both Officers indicated Mr. Teall needed further training, their evaluations of Mr. Teall stand in stark contrast to those completed by Officer Sodergren.

The City argues that Officer Sodergren's bias is irrelevant because it is solely the state of mind of the Review Board, the Superintendent, and those working under the Superintendent who ultimately approved Mr. Teall's discharge, that are relevant. The Seventh Circuit has found, however, that "[s]ummary judgment generally is improper where the plaintiff can show that an employee with discriminatory animus provided factual information or other input that *may* have affected the adverse employment action." *Dey v. Colt Constr. & Dev. Co.*, 28 F.3d 1446, 1459 (7th Cir.1994) (emphasis added); *accord Mills v. First Fed. Sav. & Loan Ass'n of Belvidere*, 83 F.3d 833, 841 (7th Cir.1996) ("[S]tatements which constitute direct evidence of discrimination may come from either an employer or his or her agents."); *Fuka*, 82 F.3d at 1404 n. 5.

The City's argument is substantially similar to one proffered by the defendant in *Shager v. Upjohn Co.*, 913 F.2d 398, 405 (7th Cir.1990). In *Upjohn*, an employee was fired, not by his supervisor, but by a Career Path Committee. The court found that the employee's supervisor had set the employee up to fail and influenced the Committee's deliberations by portraying the employee's performance in a poor light. *Id.* The Committee was not aware of the supervisor's possible age animus. The court found that the supervisor's violation of the ADEA could be imputed to the employer. Finding that the supervisor's influence may have been decisive, the court reversed the district court's grant of summary judgment. In the instant case, Officer Sodergren's possibly tainted PPOPE reports were not only presented to the Review Board, but Officer Sodergren testified before the Review Board, negatively commenting on Mr. Teall's abilities. Patrol Specialist Liaison Guiney, who was present at the Review Board's inquiry, found Officer Sodergren's testimony "damaging" to Mr. Teall's chances of becoming a police officer. (Guiney Dep. at 74).

The City responds by noting that Officers Wenger, Ladendorf, and Vick all testified negatively regarding Mr. Teall's abilities as a police officer and the Review Board did not consider Officer Sodergren's testimony any more important than the other officers. This may be, but as the *Dey* court noted, the issue is not whether Officer Sodergren's testimony and PPOPE forms were the decisive factors in the Review Board's decision, but whether Officer Sodergren's input "may have affected" the decision to terminate Mr. Teall. 28 F.3d at 1459. If Mr. Teall's evidence is believed, and it must be at this stage of the case, Officer Sodergren's actions are similar

to those of the supervisor in *Upjohn.* Thus, Officer Sodergren's bias may be imputed to the City and is evidence of a direct violation of the ADEA.[2]

■ The City also argues that Officer Sodergren's alleged statements should be disregarded since they were not made contemporaneously with the employment decision and were not related to the employment decision. Discriminatory remarks must be "related to the employment decision in question. . . ." *McCarthy v. Kemper Life Ins. Companies,* 924 F.2d 683, 686 (7th Cir.1991). A rational factfinder could conclude that Officer Sodergren's remarks indicate a discriminatory bias which pervaded his assessment of Mr. Teall and thus, because they were relied upon by the Review Board, are related to Mr. Teall's employment decision.

This issue could have been resolved had the Review Board considered the possibility of age bias by those officers testifying. The Review Board was presented with testimony that indicated such bias existed. Officer Sodergren testified that he was unsure whether Mr. Teall could perform the functions that "22 and 23 year old gung ho [sic] kids. . .should be doing. . . ." (Review Board Trans. at 15.) Officer Sodergren further opined that some members of the Sixteenth District believed Mr. Teall had Alzheimer's disease. In the absence of confirming evidence, this is additional circumstantial evidence that Officer Sodergren was biased against Mr. Teall.

Mr. Teall raised the issue of age discrimination with the Review Board. He testified before the Review Board that Officer Sodergren "always made a reference to my age and what do I want this job for." (Review Board Trans. at 40). The Review Board then asked Mr. Teall his age. After getting a response, Patrol Liaison Guiney commented to another Review Board member, in obvious jest, that compared to the Review Board member, Mr. Teall was "[a] young

man." *Id.* This ended the issue. Had the Review Board taken Mr. Teall's allegations seriously, it may have determined that Officer Sodergren was a biased witness and disregarded his testimony and PPOPE forms. As the evidence stands now, there is no indication the Review Board considered the possibility Officer Sodergren was biased against Mr. Teall due to his age.

■ The City argues that even if Officer Sodergren was biased, Mr. Teall was not qualified to be a police officer. If Officer Sodergren's PPOPE forms are disregarded, I believe there is a genuine issue of fact as to whether Mr. Teall was qualified to be a police officer. Both Officers Ladendorf and Vick indicated in PPOPE evaluations that Mr. Teall would be a good police officer. According to Mr. Teall, after an additional two weeks of training, Officer Ladendorf told him he had passed and was field qualified. At some point, Officer Ladendorf's view of Mr. Teall's abilities changed. Officer Ladendorf added a page of negative comments to Mr. Teall's fifth PPOPE, which Mr. Teall claims were not included when he signed his fifth PPOPE form. Officer Ladendorf also testified negatively regarding Mr. Teall's abilities before the Review Board.

Officer Vick's testimony before the Review Board, however, was more complimentary of Mr. Teall's abilities. Officer Vick indicated Mr. Teall initiated police activity, handled traffic stops properly, wrote tickets properly, and could generally function as a police officer. Given the totality of the evidence, there is a genuine issue of fact as to whether Mr. Teall was qualified to be a police officer.

### Conclusion

"A little common sense is not amiss in a discrimination case." *Wallace v. SMC Pneumatics, Inc.,* 103 F.3d 1394, 1400 (7th Cir. 1997). Mr. Teall presents evidence that Officer Sodergren remarked about Mr. Teall's

---

**2.** Mr. Teall also alleges that at least one member of the Review Board, Sergeant Peterson, did make discriminatory age-related comments to him. After Mr. Teall was removed from the field but before he was finally discharged, he was assigned to answer phones in the Police Academy. According to both Mr. Teall and Patricia

Keevers, who was assigned to answer phones with Mr. Teall, at one point a phone call was accidentally lost and Sergeant Peterson became upset. Officer Peterson called Mr. Teall and Ms. Keevers "fucking old people" and asked them if they could do anything right. (Teall Dep. at 210; Keevers Aff. ¶ 6).

age on a daily basis, questioning his desire to be a police officer, and arguing the job was more appropriate for a younger individual. This bias may have colored his PPOPE forms and testimony before the Review Board. Officer Sodergren's bias may be imputed to the City and may have influenced the Review Board. During Mr. Teall's training, two other officers found that he would likely be a good police officer. It may be that Mr. Teall was unqualified to be a police officer. But, given the evidence, it is premature at this time to state, as a matter of law, that the City's decision to discharge Mr. Teall was not based, in part, on illicit age bias. Accordingly, the City's motion for summary judgment is denied.