JOHNNY E. BREWER, Plaintiff v. CABARRUS PLASTICS, INC., Defendant

No. COA97-200

(Filed 15 September 1998)

1. **Employer and Employee— racial discrimination—prima facie case—directed verdict—improper**

    The trial court's grant of defendant's directed verdict motion in an employment discrimination action was improper where plaintiff had alleged racial discrimination under 42 U.S.C. § 1981 and established a prima facie case of discrimination. Bearing in mind that plaintiff's burden in establishing a prima facie case is not an onerous one and that the trial court must examine the evidence in the light most favorable to the nonmoving party on a motion for directed verdict, plaintiff's evidence on qualifications was sufficient. Directed verdict for defendant would have been appropriate only if defendant conclusively satisfied as a matter of law its burden of producing evidence of legitimate nondiscriminatory reasons for plaintiff's discipline and termination; viewing the evidence in the light most favorable to plaintiff, a genuine issue of fact existed as to whether plaintiff actually accumulated three "written" warnings as defendant claimed.

2. **Employer and Employee— retaliatory discharge—racial discrimination complaint—directed verdict**

    Directed verdict was improperly granted for defendant on a retaliatory discharge claim arising from a racial discrimination complaint where defendant challenged only the third element of retaliatory discharge, causal connection, but plaintiff presented more than a scintilla of evidence. Although defendant contended that the lapse of time between the filing of the first EEOC charge and plaintiff's termination obviated any causal connection, plaintiff's proper reliance on evidence of the sequence of

events raises a factual issue sufficient to preclude grant of a directed verdict.

Appeal by plaintiff from judgment entered 28 May 1996 by Judge James C. Davis in Cabarrus County Superior Court. Heard in the Court of Appeals 8 October 1997.

*Ferguson, Stein, Wallas, Adkins, Gresham & Sumter, P.A., by John Gresham, and Sharpe & Fosbinder, P.A., by Julie H. Fosbinder, for plaintiff-appellant.*

*Robinson, Bradshaw & Hinson, P.A., by Richard A. Vinroot and Frank H. Lancaster, for defendant-appellee.*

JOHN, Judge.

Plaintiff appeals the trial court's grant of defendant's directed verdict motion on plaintiff's claims of racial discrimination and retaliatory discharge. Plaintiff also contends the trial court erred by (1) excluding certain portions of his testimony and that of other witnesses, (2) admitting irrelevant and highly prejudicial evidence, and (3) precluding during jury *voir dire* "questions reasonably designed to explore jurors' potential racial bias and bias toward racial discrimination claims." For the reasons set forth below, we award plaintiff a new trial.

Evidence presented at trial included the following: Plaintiff, an African-American male, began work for defendant Cabarrus Plastics, Inc. (CPI) in April 1989 as a machine operator. CPI manufactures molded plastic parts. In October 1989, plaintiff transferred to the position of material handler and received an increase in pay. His duties included filling machines with plastic pellets, collecting materials from machines that had completed a particular job, cleaning machines, assembling boxes for finished parts, and substituting for other machine operators during their breaks.

During plaintiff's first one and one-half years of employment, it appeared to him that white employees were receiving overtime opportunities denied to him and that his wage increases lagged behind those of white employees. In addition, a junior white employee was promoted over plaintiff to the position of set-up technician. Plaintiff recalled that plant manager Russell Hayes said to him during this period, "Johnny Brewer, what are you doing—what the hell you think you're doing, boy?"

**BREWER v. CABARRUS PLASTICS, INC.**

[130 N.C. App. 681 (1998)]

Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) in November 1990, alleging wrongful denial of promotion, wage increases and overtime based on his race. The first two allegations were resolved against plaintiff. The EEOC determined plaintiff "was not as qualified as the selectee" for promotion and that CPI "properly followed" its promotion and wages practice. However, the EEOC found plaintiff had been denied overtime because of his race and pursued a lawsuit on his behalf. CPI paid plaintiff $200.00 to settle the suit.

According to plaintiff, a few weeks after filing his complaint with EEOC, David Brewer (Brewer), a white supervisor, called plaintiff into Brewer's office on more than one occasion. During those discussions, Brewer attempted to dissuade plaintiff from pursuing the racial discrimination allegation.

William Cook (Cook), also a supervisor at CPI, testified Brewer remarked that the plaintiff "[d]idn't get what he wanted so he's trying to make a little trouble." Cook also testified Brewer used the pejorative term "n-----" in his presence, including the protestation, "I ain't kin to no damn n-----," when another employee jokingly suggested Brewer and plaintiff were related. Former CPI employee Trina Emrich Wright (Wright) stated that Brewer asserted on more than one occasion "it was a shame that a 'N' had to have the same last name as him."

Plaintiff testified a number of changes occurred in his work environment following his EEOC complaint and that his "job got harder" after he made the claim. For example, prior to the charge, plaintiff had been working five or six machines. After the charge, plaintiff's supervisor regularly scheduled him to work eight or nine machines, more than the similarly placed employee on either the preceding or succeeding shifts. Further, plaintiff's obligation to substitute for machine operators during their break times also increased, consuming up to three hours of his work day. Wright, plaintiff's co-worker who was employed by CPI from 1989 through 1992, indicated that after plaintiff filed his charge of discrimination, "he had an extra workload" which "doubled the load in all aspects."

CPI, on the other hand, maintained that plaintiff's work performance deteriorated during his final year of employment. Plaintiff received three warnings that year and as a result, was terminated pursuant to CPI's "three strikes" procedure. CPI maintained a two-tier disciplinary policy under which certain offenses might result in

immediate termination, while accumulation of three written warnings for certain other offenses also mandated termination. As CPI's employee handbook stated:

> Receipt of three written warnings from either section [describing offenses], in any categories, within the same twelve month period will result in discharge.

On 17 July 1991, plaintiff was warned for "not doing his job properly" after letting a press run out of material. In documenting the incident, Brewer wrote, under the heading "Action Taken," "[a]ny other negligence in this matter will result in disciplinary action." After plaintiff allowed another press to run out of material, a second warning was issued 4 February 1992 for "willful failure to perform work assigned." Brewer memorialized the action taken on this occasion as a "written warning." Finally, plaintiff received a "written warning" on 17 March 1992 for "not wearing safety glasses in designated area."

Plaintiff disputed the legitimacy of the three warnings that led to his termination. With respect to the first occurrence, plaintiff explained that the automatic feeder was broken and he was unable to ascertain that material was not being drawn up into the machine. More significantly, however, while acknowledging the warning had been placed into his record in written form, plaintiff testified it was company practice to write down verbal warnings to place in the reprimanded employee's file. Plaintiff emphasized that the first incident was not classified as being a "written warning," which designation had been recited in reports of the second and third occurrences. In addition, he offered into evidence other employee records containing written "verbal warnings." Regarding the second and third warnings, plaintiff asserted they likewise were unwarranted and that he was treated differently from white employees with respect to the issuance of warnings. In any event, plaintiff was terminated the day following receipt of the third warning, and he was replaced by a white employee.

Plaintiff thereafter filed a second EEOC complaint, alleging the termination was in retaliation for his first EEOC charge. The EEOC determined that:

> Examination of the evidence indicates [plaintiff] was discharged because he received three written disciplinary actions within a twelve month period. There was no evidence to show that [CPI] discharged [plaintiff] in retaliation for filing a previous charge of discrimination against [CPI].

**BREWER v. CABARRUS PLASTICS, INC.**

[130 N.C. App. 681 (1998)]

Plaintiff filed the instant complaint 31 March 1995, alleging violation of 42 U.S.C. § 1981 (1994 & Supp. 1998) (§ 1981) and wrongful discharge based on the public policy expressed in the Equal Employment Practices Act, N.C.G.S. § 143-422.1 (1996). CPI's motion for summary judgment was denied 6 November 1995.

At the close of plaintiff's evidence during trial before a jury, CPI moved for directed verdict pursuant to N.C.G.S. § 1A-1, Rule 50 (Supp. 1997) (Rule 50). The motion was granted in an "Order and Judgment" entered 28 May 1996, both as to plaintiff's claim of violation of § 1981 and his wrongful discharge and discipline claim. Plaintiff filed timely notice of appeal.

[1] Our Supreme Court has written that

[a] motion for directed verdict tests the sufficiency of the evidence to take the case to the jury. In making its determination of whether to grant the motion, the trial court must examine all of the evidence in a light most favorable to the nonmoving party, and the nonmoving party must be given the benefit of all reasonable inferences that may be drawn from that evidence. If, after undertaking such an analysis of the evidence, the trial judge finds that there is evidence to support each element of the nonmoving party's cause of action, then the motion for directed verdict . . . should be denied.

*Abels v. Renfro Corp.*, 335 N.C. 209, 214-15, 436 S.E.2d 822, 825 (1993), *disc. review denied*, 347 N.C. 263, 493 S.E.2d 450 (1997) (citations omitted). If more than a scintilla of evidence supports each element of the non-movant's claim, the directed verdict motion should be denied. *Ace Chemical Corporation v. DSI Transports, Inc.*, 115 N.C. App. 237, 242, 446 S.E.2d 100, 103 (1994). Finally, a directed verdict should not be granted when conflicting evidence has been presented on contested issues of fact. *Id.*

Plaintiff alleged CPI violated § 1981 because it "discriminated against [him] on the basis of race and retaliation for filing a complaint of discrimination." In pertinent part,
§ 1981 provides

all persons . . . . [shall have the] same right in every State and Territory to make or enforce contracts . . . and to the full and equal benefits of all laws and proceedings for the security of persons and property as is enjoyed by white citizens . . . .

**BREWER v. CABARRUS PLASTICS, INC.**

[130 N.C. App. 681 (1998)]

The Civil Rights Act of 1991, 42 U.S.C. § 1981 (1994 & Supp. 1998) broadened the scope of § 1981 "to include essentially all forms of racial discrimination in employment." *Percell v. International Business Machines, Inc.*, 785 F. Supp. 1229, 1231 (E.D.N.C. 1992), *aff'd*, 23 F.3d 402 (4th Cir. 1994). Therefore, § 1981 encompasses plaintiff's claims for wrongful termination and wrongful discipline. *See Williams v. Carrier Corp.*, 889 F. Supp. 1528, 1530-31 (M.D. Ga. 1995), *aff'd*, 130 F.3d 444 (11th Cir. 1997) (plaintiff may establish *prima facie* case of racially biased discipline under § 1981 by showing he or she did not violate work rule or that he or she engaged in conduct similar to individual outside protected group who was disciplined less severely). Plaintiff's retaliation claim is likewise actionable under § 1981. *See Skeeter v. City of Norfolk*, 681 F. Supp. 1149, 1154 (E.D. Va. 1987), *aff'd* 898 F.2d 147 (4th. Cir. 1990), *cert. denied*, 498 U.S. 838, 112 L. Ed. 2d 81 (1990) (retaliatory discharge actionable under § 1981).

The models and standards developed in jurisprudence under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e (1994 & Supp. 1997) (Title VII) also apply to claims under § 1981. *Patterson v. McLean Credit Union*, 491 U.S. 164, 181-82, 105 L. Ed. 2d 132, 153 (1989), *aff'd* 39 F.3d 515 (4th Cir. 1994). The ultimate purpose of both Title VII and G.S. § 143-422.2 is to eliminate "discriminatory practices in employment." *North Carolina Department of Correction v. Gibson*, 308 N.C. 131, 141, 301 S.E.2d 78, 85 (1983). In analyzing state claims, our Supreme Court has adopted the evidentiary standards and principles developed under Title VII. *Id.*

Two primary models have developed: (1) the circumstantial evidence model, *see McDonnell Douglas Corporation v. Green*, 411 U.S. 792, 802, 36 L. Ed. 2d 668, 677-78 (1973), *aff'd* 528 F.2d 1102 (8th Cir. 1976) (under circumstantial evidence model as applied to discriminatory discharge claim, plaintiff must establish *prima facie* case by showing a) he was member of protected class, b) was terminated, c) was qualified to perform assigned job duties, and d) was replaced by a member of non-protected class or treated more harshly than similarly situated non-protected employees), and (2) the direct evidence model, *see McCarthy v. Kemper Life Insurance Company*, 924 F.2d 683, 686 (7th Cir. 1991) (direct evidence, such as racially derogatory comments, is proof of discriminatory motive on part of employer).

In a racial discrimination case, our Supreme Court has set forth the standards as follows:

**BREWER v. CABARRUS PLASTICS, INC.**

[130 N.C. App. 681 (1998)]

(1) The claimant carries the initial burden of establishing a *prima facie* case of discrimination.

(2) The burden shifts to the employer to articulate some legitimate nondiscriminatory reason for the applicant's rejection.

(3) If a legitimate nondiscriminatory reason for rejection has been articulated, the claimant has the opportunity to show that the stated reason for rejection was, in fact, a pretext for discrimination.      .

*Gibson,* 308 N.C. at 137, 301 S.E.2d at 82.

"The burden of establishing a *prima facie* case of discrimination is not onerous," and may be accomplished by a variety of means, *id.* at 137, 301 S.E.2d at 83, including showing

(1) a claimant is a member of a minority group, (2) he was qualified for the position, (3) he was discharged, and (4) the employer replaced him with a person who was not a member of a minority group.

*Id.* Alternatively, a claimant may show discharge of a black employee and retention of a white employee under apparently similar circumstances. *Id.*

Establishment of a *prima facie* case gives rise to a presumption that "the employer unlawfully discriminated against the employee." *Id.* at 138, 301 S.E.2d at 83. The employer then has the "burden of *producing* evidence to rebut the presumption of discrimination." *Id.* The employer's burden of production is satisfied "if he simply explains what he has done or produces evidence of legitimate nondiscriminatory reasons." *Id.*

Upon production by the employer of an "explanation . . . legally sufficient to support a judgment" in its favor, "the [employee] is then given the opportunity to show that the employer's stated reasons are in fact a pretext for intentional discrimination." *Id.* at 139, 301 S.E.2d at 83-84. In doing so, the employee may rely on evidence offered to establish a *prima facie* case "to carry his burden of proving pretext." *Id.*

In the case *sub judice,* we believe plaintiff met his burden of establishing a *prima facie* case of discrimination, thereby precluding the grant of defendant's directed verdict motion on grounds he failed to do so. *See Ace Chemical Corporation,* 115 N.C. App. at 242, 446

S.E.2d at 103 (if more than scintilla of evidence supports each element of non-movant's claim, motion should be denied). Defendant does not dispute that plaintiff presented evidence satisfying three of the four elements recited in *Gibson*: plaintiff was an African-American discharged from his position at CPI and replaced by a white worker. *See Gibson*, 308 N.C. at 137, 301 S.E.2d at 82-83.

CPI contends, however, that plaintiff failed to present *prima facie* evidence of his qualification for the position. *See Hughes v. Bedsole*, 48 F.3d 1376, 1383 (4th Cir. 1995), *cert. denied*, 516 U.S. 870, 133 L. Ed. 2d 126 (1995) ("[plaintiff] must . . . eliminate concerns that she was fired because of her performance or qualifications, two of the most common nondiscriminatory reasons for any adverse employment decision"). Bearing in mind that plaintiff's burden in establishing a *prima facie* case was "not an onerous one," *see Gibson*, 308 N.C. at 137, 301 S.E.2d at 82, and that on a motion for directed verdict the trial court must examine the evidence in the light most favorable to the nonmoving party, *Abels*, 335 N.C. at 214-15, 436 S.E.2d at 825, we conclude plaintiff's evidence on the qualifications prong of *Gibson* was sufficient to withstand defendant's motion.

Plaintiff presented evidence he was hired 3 April 1989 at a pay rate of $6.50 per hour and terminated 17 March 1992 when he was receiving $8 per hour. He received merit pay increases while employed at CPI. *See Gomez v. Trustees of Harvard University*, 677 F. Supp. 23, 25 (D.D.C. 1988) (plaintiff's burden in making out *prima facie* case is "de minimis," and salary increases are indicative of qualification). Plaintiff's evidence also included positive performance evaluations and a relative lack of disciplinary actions prior to filing the EEOC complaint. Finally, plaintiff performed additional duties following his initial EEOC complaint. We believe this evidence, viewed in the light most favorable to plaintiff, is sufficient to indicate plaintiff's qualifications for the job. At a minimum, plaintiff presented the necessary "scintilla of evidence" supporting the element of qualification for his position. *See Ace Chemical Corporation*, 115 N.C. App. at 242, 446 S.E.2d at 103.

In response, CPI points to the three warnings received by plaintiff, insisting they reveal inadequate work performance and consequent lack of qualification for promotion. We cannot say this evidence overcame plaintiff's *prima facie* case as a matter of law so as to justify verdict being directed in favor of CPI. *See Abels*, 335 N.C. at 214-15, 436 S.E.2d at 825 (nonmoving party must be given benefit of all reasonable inferences that may be drawn).

**BREWER v. CABARRUS PLASTICS, INC.**

[130 N.C. App. 681 (1998)]

CPI cites *Karpel v. Inova Health System Services*, 134 F.3d 1222 (4th Cir. 1998) as supporting its contention plaintiff failed to present sufficient evidence of satisfactory job performance. We disagree. In affirming summary judgment for the defendant-employer, the Fourth Circuit in *Karpel* noted the record therein "clearly demonstrate[d] that [plaintiff's] job performance was unsatisfactory." *Karpel*, 134 F.3d at 1128. The plaintiff-employee had been repeatedly tardy, accumulated multiple inadequate performance reviews, and failed to complete required monthly summaries. *Id.*

By contrast, the record in the case *sub judice* does not "clearly" demonstrate plaintiff's lack of qualifications for the job. For example, we note plaintiff disputed the warnings, testified they resulted in part from his increased workload, and asserted the first warning was "verbal" as opposed to "written." Wright corroborated the testimony regarding plaintiff's increased workload. A directed verdict is not proper when there is conflicting evidence on contested issues of fact. *Ace Chemical Corporation*, 115 N.C. App. at 244, 446 S.E.2d at 104.

CPI also relies on *McCarthy*, 924 F.2d 683. CPI accurately relates that plaintiff in *McCarthy*, like plaintiff herein, filed suit against his employer alleging racial discrimination and retaliation in violation of Title VII and § 1981. *Id.* at 685. McCarthy had filed an EEOC charge and was subsequently discharged for misconduct. *Id.* at 686. However, unlike plaintiff, McCarthy "disavowed the indirect method of proof of race discrimination," *i.e.*, the circumstantial model of evidence, and instead chose to proceed by direct evidence. *Id.* at 686-87. Summary judgment was granted because McCarthy failed to show that the remarks upon which he relied as direct evidence of discrimination "were related to the employment decision in question." *Id.* In the case *sub judice*, plaintiff utilized the circumstantial evidence model in presenting his *prima facie* case. *McCarthy* is therefore distinguishable.

Because plaintiff presented a *prima facie* case of discrimination under the circumstantial evidence model, it is unnecessary for us to consider whether he presented sufficient evidence to survive a Rule 50 motion under the direct evidence model.

Plaintiff having established a *prima facie* case of discrimination, directed verdict in favor of defendant would have been appropriate only if CPI conclusively satisfied as a matter of law, *see Ace Chemical Corporation*, 115 N.C. App. at 244, 446 S.E.2d at 104-05, its burden of producing evidence of legitimate non-discriminatory reasons for

plaintiff's discipline and termination, *see Gibson*, 308 N.C. at 137, 301 S.E.2d at 83. CPI focused upon plaintiff's receipt of three written warnings within a twelve month period as the basis for his termination. However, as discussed above, plaintiff disputed the warnings at trial, arguing all were unwarranted and the first was not written. Viewing this evidence, as we must, in the light most favorable to plaintiff, *Abels*, 335 N.C. at 214-15, 436 S.E.2d at 825, we believe a genuine issue of fact existed with regard to whether plaintiff actually accumulated three "written" warnings. In light of the conflicting evidence, the trial court's grant of CPI's directed verdict motion was improper. *See Ace Chemical Corporation*, 115 N.C. App. at 244, 446 S.E.2d at 104.

[2] We next examine the trial court's ruling with reference to plaintiff's claim of retaliatory discipline and discharge. To establish a *prima facie* case of retaliation, it must be shown that (1) the plaintiff engaged in a protected activity, (2) the employer took adverse action, and (3) there existed a causal connection between the protected activity and the adverse action. *Karpel*, 134 F.3d at 1228.

Again, CPI does not take issue with plaintiff's showing on the first two elements. Plaintiff filed an EEOC complaint and was subsequently disciplined and terminated. Further, plaintiff testified to conversations with his supervisor (Brewer) which demonstrated CPI was aware of the protected activity.

However, CPI vigorously challenges plaintiff's evidence on the third element, causal connection. Plaintiff retorts he presented "overwhelming" evidence of the causal connection between the EEOC filing and his subsequent discipline and termination.

According to plaintiff, evidence pertinent to this issue consisted of testimony regarding: (1) continued efforts by Brewer to convince plaintiff to withdraw his racial discrimination complaint, (2) the timing of events following plaintiff's initial EEOC filing, and (3) changes in the treatment of plaintiff by Brewer. While plaintiff may be guilty of hyperbole in characterizing this evidence as "overwhelming," we nonetheless hold it sufficient to survive defendant's directed verdict motion. *See Karpel*, 134 F.3d at 1229 ("[a]lthough [plaintiff] present[ed] little or no direct evidence of a causal connection between her protected activity and [the employer's] adverse action, little is required"), and *Abels*, 335 N.C. at 216, 436 S.E.2d at 826 (directed verdict motion on retaliatory discharge claim under N.C.G.S. § 97-6.1 (1991) (repealed 1992), properly denied despite weakness of "the evi-

dence of a causal connection between the discharge and filing of workers' compensation claim").

CPI interjects that even if Brewer altered his treatment of and attitude towards plaintiff following filing of the EEOC complaint and attempted to persuade plaintiff to withdraw the charge, this did not constitute evidence of retaliation. Without so deciding, we tend to agree. *See Miller v. Aluminum Company of America*, 679 F. Supp. 495, 505 (W.D. Pa. 1988), *aff'd without published opinion*, 856 F.2d 184 (3rd Cir. 1988) (summary judgment proper on retaliation claim; alleged "snubbing" by supervisors did "not amount to unlawful retaliation," because it would be unreasonable to "expect . . . [plaintiff's] supervisors to act cordially toward one who had sued them"); *see also Burrows v. Chemed Corporation*, 567 F. Supp. 978, 982-87 (E.D. Mo. 1983), *aff'd* 743 F.2d 612 (8th Cir. 1984) (two meetings in corporate president's office to question and criticize plaintiff for filing EEOC charge did not constitute harassment or retaliation).

Less persuasive, however, is CPI's contention that the passage of fifteen months between filing of the first EEOC charge and plaintiff's termination obviated any causal connection between the two events. Although the lapse of time between protected activity and adverse action may negate causal connection, *see Maldonado v. Metra*, 743 F. Supp. 563, 568 (N.D. Ill. 1990), plaintiff's proper reliance on evidence of the sequence of events herein raises a factual issue sufficient to preclude grant of a directed verdict. *See Ace Chemical Corporation*, 115 N.C. App. at 244, 446 S.E.2d at 104.

Plaintiff's initial EEOC complaint was signed 30 November 1990. In the weeks following, Brewer approached plaintiff three times about withdrawing the charge, the former expressing his concern about the racial discrimination charge. CPI responded in June 1991 to the EEOC's request for explanatory information. Less than three weeks later, plaintiff's first warning was issued. In September 1991, the EEOC issued its ruling finding merit in one of plaintiff's allegations, and filed a "Notice of Reconciliation Failure" 30 October 1991. Plaintiff received two additional warnings within the succeeding four months, whereupon he was terminated.

Based on the foregoing, we hold plaintiff presented more than a "scintilla of evidence" on each element of his claim of retaliatory discharge. *See Ace Chemical Corporation*, 115 N.C. App. at 242, 446 S.E.2d at 103. Accordingly, directed verdict was improperly granted on this claim.

Plaintiff also assigns as error the admission and exclusion of certain evidence as well as the rejection of certain of his questions to potential jurors on *voir dire*. We decline to consider these assignments of error which are deemed unlikely to recur on retrial. *See Akzona, Inc. v. Southern Railway Company*, 314 N.C. 488, 498, 334 S.E.2d 759, 765 (1985) (evidentiary matters deferred "to the trial judge who presides over the continuation of the case"). Regarding plaintiff's contentions about flaws in the jury selection process, moreover, we note the case never reached the jury and any error during *voir dire* could not have affected the result. *See Warren v. City of Asheville*, 74 N.C. App. 402, 409, 328 S.E.2d 859, 864, *disc. review denied*, 314 N.C. 336, 333 S.E.2d 496 (1985) ("burden is on appellant not only to show error, but also to enable the Court to see that he was prejudiced and that a different result would likely have ensued had the error not occurred").

New trial.

Judges GREENE and TIMMONS-GOODSON concur.