DAVID B. MILLER, Plaintiff v. BARBER-SCOTIA COLLEGE, Defendant

No. COA03-292

(Filed 7 December 2004)

**1. Civil Rights— dismissed college professor—burden of proof not carried**

The trial court erred by not dismissing a claim for racial discrimination under 42 U.S.C. § 1981 by a college professor who was dismissed after a dispute with the administration over changing a grade. Plaintiff did not meet his burden of showing that defendant's stated reason for its action was a pretext.

**2. Civil Rights— dismissed college professor—punitive damages—aggravated conduct—evidence insufficient**

Assuming. that the trial court properly denied defendant's motions to dismiss (which it did not) in a claim of racial discrimination by a dismissed college professor, the trial court erred by not granting defendant's motions for a directed verdict and a j.n.o.v. on punitive damages. The jury made no finding of aggravated conduct and plaintiff's testimony standing alone is not sufficient, as its probative value is slight and it did not address whether defendant knew that its purported actions were illegal.

Judge HUDSON concurring in part and dissenting in part.

Appeal by defendant from judgment entered 20 March 2001 by Judge Donna H. Johnson in Cabarrus County District Court. Heard in the Court of Appeals 20 November 2003.

*U. Wilfred Nwauwa for plaintiff-appellee.*

*Plummer, Belo & Russell, PA, by Vernon A. Russell, for defendant-appellant.*

STEELMAN, Judge.

Defendant, Barber-Scotia College, appeals a trial court order denying its motions for directed verdict and judgment notwithstanding the verdict. For the reasons discussed herein, we vacate the judgment of the trial court and reach only defendant's first two assignments of error.

MILLER v. BARBER-SCOTIA COLLEGE

[167 N.C. App. 165 (2004)]

Plaintiff, David B. Miller, was a professor at defendant Barber-Scotia College, teaching sociology, criminal justice, and anthropology. In February 1997, plaintiff requested that defendant's registrar change a grade of Mr. Jones, a student, who had taken a course taught by plaintiff.

Once a final grade for a student has been submitted by a professor to defendant, it can only be changed in accordance with a specific policy adopted by defendant. This policy allows for a grade to be changed in only four situations: (1) an incorrectly computed grade; (2) an incorrect transcription of a grade; (3) an unintentional omission of some component of a student's work; and (4) a successful grade appeal. Any request for a grade change must be in writing and must state the reason for the grade change. The grade change form must be approved by the professor's division chairperson and then by the dean for academic affairs before it is forwarded to the registrar of the college.

Plaintiff initially submitted a grade change request for Mr. Jones which did not state a reason for the grade change. This request was rejected by Mr. James Ramsey, dean of academic affairs for defendant. Plaintiff submitted the grade change request for Mr. Jones a second time without stating a reason for the requested change. Again, Mr. Ramsey denied the request. Mr. Jones's grade change request was submitted a third time. A reason was stated on the third request but was not one of the four situations set forth in defendant's grade change policy. This last grade change request was approved by plaintiff's division chairperson and immediate supervisor, Dr. Babafemi Elufiede, but was again rejected by Mr. Ramsey. The record does not indicate whether Dr. Elufiede approved the first two grade change requests.

Following a meeting with plaintiff to discuss the rejected grade change requests for Mr. Jones, Mr. Ramsey sent a memo to defendant's president recommending that plaintiff be given a one year terminal contract based upon his disregard of college policies on changing grades. This memo was dated 22 April 1997.

On 23 April 1997 defendant tendered an employment contract to plaintiff for the next school year. The contract contained a provision stating that it was a "terminal contract" which would not be renewed by defendant.

Plaintiff filed a complaint against defendant alleging breach of contract and racial discrimination under 42 U.S.C. § 1981 (2004).

Plaintiff alleged that his contract was not renewed because of his race (white). At trial, a jury returned a verdict finding that defendant discriminated against plaintiff based upon his race and awarded plaintiff $68,495.00 in compensatory damages plus interest and $7,500.00 in punitive damages. The jury found that there was no contract of employment between plaintiff and defendant beyond the 1997-1998 school year. Defendant appeals.

We note that due to a failure of the courtroom recording system, there is no transcript of the trial proceedings. This case is therefore reviewed based upon the parties' summation of the evidence contained in the record on appeal.

[1] In its first assignment of error, defendant argues that the trial court erred by failing to dismiss plaintiff's claim for racial discrimination under 42 U.S.C. § 1981 at the close of plaintiff's evidence and at the close of all the evidence, and by denying its motion for judgment notwithstanding the verdict. We agree.

The standard of review for the denial of motions for directed verdict and judgment notwithstanding the verdict is identical. *Tomika Invs., Inc. v. Macedonia True Vine Pentecostal Holiness Church of God, Inc.*, 136 N.C. App. 493, 498, 524 S.E.2d 591, 595 (2000). Therefore, we consider these arguments together. The evidence must be viewed in the light most favorable to the nonmovant, giving him the benefit of every reasonable inference, in determining whether the evidence was sufficient to go to the jury. *Hawley v. Cash*, 155 N.C. App. 580, 582, 574 S.E.2d 684, 686 (2002). A "directed verdict is mandated where the facts and the law will reasonably support only one conclusion." *McDermott Int'l, Inc. v. Wilander*, 498 U.S. 337, 356, 112 L. Ed. 2d 866, 111 S. Ct. 807 (1991). "To defeat an employer's motion for [judgment as a matter of law] as to liability in a discrimination suit, the plaintiff must present substantial evidence to support as a reasonable probability, rather than as a mere possibility, that her employer discriminated against her because of a protected characteristic." *DeJarnette v. Corning, Inc.*, 133 F.3d 293, 298 (4th Cir. 1998). "While we are compelled to accord the utmost respect to jury verdicts and tread gingerly in reviewing them, we are not a rubber stamp convened merely to endorse the conclusions of the jury, but rather have a duty to reverse the [jury's verdict] if the evidence cannot support it." *Price v. City of Charlotte*, 93 F.3d 1241, 1250 (4th Cir. 1996).

Plaintiff's claim of racial discrimination was based solely upon the theory of disparate treatment. In order to prevail against a motion

for a directed verdict, or a judgment notwithstanding the verdict, plaintiff must meet its burden of persuasion as initially established in the Title VII context by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 36 L. Ed. 2d 668, 677 (1973). *DeJarnette v. Corning, Inc.*, 133 F.3d 293 (4th Cir., 1998). The test is the same under Title VII and 42 U.S.C. § 1981. *Love-Lane v. Martin*, 355 F.3d 766, 786 (4th Cir., 2004). In order to satisfy his burden under the *McDonnell Douglas* test "plaintiff must first establish a *prima facie* case of discrimination, the defendant may respond by producing evidence that it acted with a legitimate, nondiscriminatory reason, and then the plaintiff may adduce evidence showing that the defendant's proffered reason was mere pretext and that race was the real reason for the defendant's less favorable treatment of the plaintiff." *Williams v. Staples, Inc.*, 372 F.3d 662, 667 (4th Cir., 2004) (citation omitted).

Assuming *arguendo* that plaintiff proved a *prima facie* case of racial discrimination, defendant then had a burden of production under the *McDonnell Douglas* line of cases to show a legitimate, nondiscriminatory reason for the adverse action against the employee. *Williams*, 372 F.3d 662, 668. If the employer satisfies its burden, the "presumption of discrimination raised by the prima facie case is rebutted and drops from the case." *Williams*, 372 F.3d at 669. The "sole remaining issue for our consideration becomes whether [plaintiff] can prove by a preponderance of the evidence" that defendant's stated reason for its action was a pretext to hide racial discrimination. *Id.*; *Mereish v. Walker*, 359 F.3d 330, 336 (4th Cir., 2004). Appellant can meet its burden of proving pretext "either by showing that [defendant's] explanation is 'unworthy of credence' or by offering other forms of circumstantial evidence sufficiently probative of . . . discrimination." *Id.* " 'The ultimate question is whether the employer intentionally discriminated, and proof that the employer's proffered reason is unpersuasive, or even obviously contrived, does not necessarily establish that [plaintiff's] proffered reason . . . is correct.' It is not enough to disbelieve the defendants here; the factfinder must believe [plaintiff's] explanation of intentional race discrimination." *Love-Lane*, 355 F.3d at 788. A plaintiff's own assertions of discrimination are insufficient to overcome an employer's legitimate, nondiscriminatory reason for discharge. *Williams v. Cerberonics, Inc.*, 871 F.2d 452, 456 (4th Cir., 1989). This is because "It is the perception of the decision maker which is relevant, not the self-assessment of the plaintiff." *King v. Rumsfeld*, 328 F.3d 145, 149 (4th Cir., 2003), *cert denied*, 157 L. Ed. 2d 742, 124 S. Ct. 922 (U.S. 2003) (*quoting Evans v. Technologies Applications & Serv. Co.*, 80

F.3d 954, 960-61 (4th Cir. 1996)). "At the end, the burden remains on [plaintiff] to demonstrate that the reasons offered by [defendant] are a pretext for discrimination, or stated differently, that the [defendant's] reason is unworthy of credence to the extent that it will permit the trier of fact to infer the ultimate fact of intentional discrimination." *Dugan v. Albemarle County Sch. Bd.*, 293 F.3d 716, 723 (4th Cir., 2002) (citation omitted).

In the instant case, defendant met its burden by proffering a legitimate, nondiscriminatory reason for plaintiff's discharge, namely that plaintiff failed to follow College policy when requesting the grade changes for Mr. Jones and did not meet the college's legitimate expectations by failing to understand the potential damage to students and the College for giving unearned grades. The record includes a memorandum from Mr. Ramsey to Dr. Sammie Potts, president of the College, describing plaintiff's conduct, action taken thus far, and future recommendations. In the memorandum, Ramsey indicated that plaintiff "disregarded College Policy as stated in the College Catalog on numerous occasions relative to the changing of grades." Mr. Ramsey further noted: "In discussions with [plaintiff], it is my feeling that he does not understand the [damage] that is being done to students who receive unearned grades and he does not understand the potential damages to the institution." Dr. Potts agreed with Mr. Ramsey's recommendation, and subsequently offered plaintiff the terminal contract.

While Mr. Ramsey had only been in employment with the College for a short time prior to plaintiff's termination, he was hired out of retirement as Academic Dean to strengthen the academic integrity of the College and to effectuate changes in college policy. Therefore, it was proper for Mr. Ramsey to observe and conclude that plaintiff did not conform to the legitimate academic expectations of the College.

Because defendant met its burden of production in articulating a non-discriminatory reason for its actions, the presumption of discrimination created by plaintiff's *prima facie* case dissolved and plaintiff was required to meet his burden of persuasion that defendant's proffered reason was mere pretext. *Williams*, 372 F.3d at 669. Plaintiff offered his own allegations that Mr. Ramsey acted with discriminatory intent (stating that he felt he was fired because of his race). This evidence, coming as it does from plaintiff, is "close to irrelevant." *Hawkins v. PepsiCo, Inc.*, 203 F.3d 274, 280 (4th Cir., 2000).

The only other evidence presented by plaintiff pertinent to the issue was the testimony of plaintiff's immediate supervisor, Dr. Elufiede. Dr. Elufiede, who is black, testified that if plaintiff violated defendant's policies by recommending the grade change then he also violated it by approving the request. Plaintiff submitted a grade change request form for Mr. Jones on three separate occasions. Mr. Ramsey declined to approve each of the requests. It is unclear from the record whether Dr. Elufiede approved the first two grade change requests. However, it is clear that Dr. Elufiede approved the third grade change request and forwarded it to Mr. Ramsey, his direct supervisor. Dr. Elufiede was not given a terminal contract.

Plaintiff and Dr. Elufiede were not similarly situated, and thus any disparate treatment between Dr. Elufiede and plaintiff does not tend to prove discrimination by defendant. *See Disher v. Weaver*, 308 F. Supp. 2d 614, 620 (M.D.N.C., 2004). Foremost, Dr. Elufiede was plaintiff's immediate supervisor. He was the chair of the social sciences department, and plaintiff was only a professor in that department. They did not share the same immediate supervisor, did not have the same job responsibilities or job description, and did not have equivalent experience. *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 680 (7th Cir., 2002). Furthermore, it was not Dr. Elufiede who initiated the grade change requests on three separate occasions without valid reasons. Rather, he merely reviewed and approved one of them as plaintiff's supervisor. The conduct with respect to the grade change request by plaintiff and Dr. Elufiede was not substantially similar. These differences in Dr. Elufiede's and plaintiff's job duties and conduct are such that any difference in the treatment of the two does not support an assertion of discrimination. This circumstantial evidence is simply too weak and speculative to establish that defendant's stated legitimate reasons for offering plaintiff a terminal contract were pretextual. Thus, defendant was entitled to a directed verdict dismissing plaintiff's claim for discrimination. *Reeves*, 530 U.S. at 148-49, 147 L. Ed. 2d at 120.

In its second assignment of error, defendant argues that the trial court erred in denying its motion to dismiss plaintiff's claims for punitive damages. We agree.

Plaintiff's claim for punitive damages was based solely upon the alleged racial discrimination by defendant. As discussed above, this claim should have been dismissed by the trial court and as a result we hold that the plaintiff's claim for punitive damages, too, should have been dismissed.

**[2]** Further, assuming *arguendo* that the trial court properly denied defendant's motions on the issue of liability, we hold that the trial court erred in failing to grant defendant's motions for directed verdict and judgment notwithstanding the verdict with respect to the issue of punitive damages. After determining that defendant had discriminated against plaintiff, the jury awarded plaintiff $7,500.00 in punitive damages. In order for a plaintiff to sustain an award of punitive damages pursuant to § 1981 he must prove some aggravating conduct beyond that needed to sustain a claim of discrimination under the statute. *Smith v. Wade*, 461 U.S. 30, 51, 75 L. Ed. 2d 632, 648 (1983); *Lowery v. Circuit City Stores, Inc.*, 206 F.3d 431, 441 (4th Cir., 2000); *Rowlett v. Anheuser-Busch*, 832 F.2d 194 (1st Cir. 1987); *Caperci v. Huntoon*, 397 F.2d 799, 801 (1st Cir., 1968) (federal common law applies); *Tillman v. Wheaton-Haven Recreation Ass'n*, 367 F. Supp. 860, 864 (D. Md., 1973). "[M]ere proof of a violation of the statute is not enough to recover punitive damages. There must also be proof that the defendant, in violating the letter of section 1981, exhibited oppression, malice, gross negligence, willful or wanton misconduct, or reckless disregard of the plaintiff's civil rights." James D. Ghiardi et al., *Punitive Damages L. & Prac.* § 15.07 (1999). In the case of *Kolstad v. ADA*, 527 U.S. 526, 144 L. Ed. 2d 494 (1999), the United States Supreme Court analyzed what aggravated conduct plaintiff must prove under Title VII to entitle it to punitive damages pursuant to 42 U.S.C. § 1981a (2004). The Fourth Circuit has determined that the *Kolstad* test is applicable to cases brought under 42 U.S.C. § 1981 as well as those brought under Title VII. *Lowery*, 206 F.3d at 441 ("Thus, any case law construing the punitive damages standard set forth in § 1981a, for example *Kolstad*, is equally applicable to clarify the common law punitive damages standard with respect to a § 1981 claim."). Following *Kolstad*, the *Lowery* Court held that in order to recover punitive damages under 42 U.S.C. § 1981, the plaintiff must prove that defendant " 'engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference to [plaintiff's] federally protected rights,' 42 U.S.C. § 1981a(b)(1)," *Lowery*, 206 F.3d at 441. In order for plaintiff to prove this aggravated conduct, he must not only prove that defendant discriminated, but that it discriminated " 'in the face of a perceived risk that its actions will violate federal law.' " *Id.* at 442 (*quoting Kolstad*, 527 U.S. at 536).

The jury in the instant case made no finding of aggravated conduct on the part of defendant. Our review of the record fails to uncover any evidence, beyond two sentences summarizing plaintiff's

personal feelings on the matter ("Mr. Miller thinks that he was single [sic] out for dismissal because of his race (white). He feels the only explanation for his dismissal is that Mr. Ramsey (black) had innate feelings toward whites."), that would support a finding of the required aggravated conduct. Plaintiff fails in meeting his burden because, even assuming *arguendo* that plaintiff has proved discrimination, he has not offered any evidence that defendant acted with the knowledge that its conduct was in violation of federal law. Plaintiff's testimony standing alone is not sufficient, as its probative weight is slight (*see King v. Rumsfeld*, 328 F.3d 145, 150 (4th Cir., 2003); *Gairola v. Virginia Dep't of General Services*, 753 F.2d 1281, 1288 n.4 (4th Cir., 1985)), and it does not address the issue of defendant's knowledge that its purported actions were illegal. Thus, even assuming *arguendo* that plaintiff proved his case of discrimination under 42 U.S.C. § 1981, having offered no evidence of aggravated conduct, defendant's motion for directed verdict on the issue of punitive damages should have been granted.

VACATED AND REMANDED.

Judge TYSON concurs.

Judge HUDSON dissents in part, concurs in part.

HUDSON, Judge, concurring in part and dissenting in part.

Defendant appeals from the denial of a motion for judgment not withstanding the verdict (JNOV), following a jury verdict in plaintiff's favor. Because I believe the majority has misapplied the legal precedents and imposed burdens on plaintiff that the law does not require, I dissent with respect to the primary claim of employment discrimination. I concur, however, with the disposition of the issue of punitive damages.

"In considering a motion for JNOV, the trial court is to consider all evidence in the light most favorable to the party opposing the motion; the nonmovant is to be given the benefit of every reasonable inference that legitimately may be drawn from the evidence; and contradictions must be resolved in the nonmovant's favor." *Tomika Invs., Inc. v. Macedonia True Vine Pent. Holiness Ch. of God*, 136 N.C. App. 493, 498, 524 S.E.2d 591, 595 (2000). The standard of review for the denial of a JNOV is whether the evidence was sufficient to go to the jury. *Id.* "The hurdle is high for the moving party as the

motion should be denied if there is more than a scintilla of evidence to support the plaintiff's *prima facie* case." *Id.* Thus, if there is more than a scintilla of evidence to support plaintiff's *prima facie* claim of discrimination, we must affirm the trial court's denial of defendant's motions.

"The burden of establishing a *prima facie* case of discrimination is not onerous." *North Carolina Dep't of Correction v. Gibson,* 308 N.C. 131, 137, 301 S.E.2d 78, 82 (1983). "[A] *prima facie* case of discrimination may be made out by showing that (1) a claimant is a member of a minority group, (2) he was qualified for the position, (3) he was discharged, and (4) the employer replaced him with a person who was not a member of a minority group." *Id.* The precise requirements of a *prima facie* case can vary depending on the context and were "never intended to be rigid, mechanized, or ritualistic." *Furnco Constr. Corp. v. Waters,* 438 U.S. 567, 577, 57 L. Ed. 2d 957, 967 (1978). "A *prima facie* case of discrimination may . . . be made out by showing the discharge of [a minority employee] and the retention of [a majority employee] under apparently similar circumstances." *Gibson,* 308 N.C. at 137, 301 S.E.2d at 83. More recently, the United States Supreme Court has evidenced an intent to ease the burden of proving discrimination. *Desert Palace v. Costa,* 539 U.S. 90, 101, 156 L. Ed. 2d 84, 95 (2003) (holding that discrimination is unlawful even if only one of several motives for adverse employment action).

Making a *prima facie* case is not the same as proving discrimination. *Gibson,* 308 N.C. at 138, 301 S.E.2d at 84. "Rather, it is proof of actions taken by the employer from which a court may infer discriminatory intent or design because experience has proven that in the absence of an explanation, it is more likely than not that the employer's actions were based upon discriminatory considerations." *Id.* at 138, 301 S.E.2d at 84. This Court has held that the "plaintiff met his burden of establishing a *prima facie* case of discrimination [by presenting] evidence satisfying *three of the four elements* recited in *Gibson*: plaintiff was an African-American discharged from his position at CPI and replaced by a white worker." *Brewer v. Cabarrus Plastics, Inc.,* 130 N.C. App. 681, 688, 504 S.E.2d 580, 584 (1998) (internal citation omitted) (emphasis added). Once a plaintiff has established a *prima facie* case, the burden shifts to the employer to articulate some legitimate nondiscriminatory reason for its actions. *Id.*

In reviewing the denial of defendant's motions for directed verdict and for JNOV then, we consider whether, taking all evidence in

the light most favorable to plaintiff, there is more than a scintilla of evidence to support plaintiff's *prima facie* claim of discrimination. Because the evidence is undisputed that plaintiff, who is white, was qualified for his position at the historically black college, was fired by defendant, and was replaced by a non-white employee, on this basis alone plaintiff has met the requirements of a *prima facie* case as articulated by this Court in *Brewer*.

Here, plaintiff alleges he was fired because of his race. Defendant's evidence tended to show that he was fired for violating policy regarding a student's grade change. Under defendant's policies, such a request would be initiated by a professor (plaintiff), then passed on to the department head (Babfemi Elufiede), and if approved by the department head, would be passed on again to Mr. Ramsey, the academic dean, for final approval and implementation. Plaintiff asserts that Mr. Ramsey, his and Elufiede's supervisor regarding grade changes and contract matters, acted in a racially discriminatory manner when he recommended that plaintiff be terminated. The evidence tended to show that Mr. Ramsey is the supervisor of both plaintiff and Mr. Elufiede in the matter of grade changes, and that both plaintiff and Mr. Elufiede approved the grade change in question. As special assistant to the president for academic affairs, Mr. Ramsey was responsible for making recommendations to the college president about termination of faculty. Mr. Ramsey treated plaintiff and Mr. Elufiede differently, despite essentially identical actions in this regard. Defendant offered no explanation for the disparate treatment of plaintiff and Mr. Elufiede, and in fact presented no evidence at the trial.

Although under *Brewer*, it may not be necessary to prove such, the majority focuses on the "similarly situated" prong, as articulated in *McDonnell Douglas Corp. v. Green*. 411 U.S. 792, 802, 36 L. Ed. 2d 668, 677 (1973). The only possibly disputed issue between the parties is whether plaintiff was treated differently than a similarly situated non-white employee, Mr. Elufiede. If the evidence, in the light most favorable to the plaintiff, supports that inference, the trial court acted properly sending plaintiff's case to the jury. I conclude that, even if plaintiff's burden included presenting a *prima facie* case of disparate treatment of similarly situated employees, the evidence does support that inference and that the trial court properly denied the motions to dismiss and for JNOV.

A long line of cases have explored the definition of "similarly situated." The majority's opinion frames the issue as solely controlled

by whether the plaintiff and the comparator employee had the same supervisor. "However, the 'same supervisor' criterium has never been read as an inflexible requirement." *Seay v. TVA*, 339 F.3d 454, 479 (6th Cir. 2003). Courts have rejected "the proposition that whenever two different supervisors are involved in administering the disciplinary actions, the comparators cannot as a matter of law be similarly situated for Title VII purposes." *Anderson v. WBMG-42*, 253 F.3d 561, 565 (11th Cir. 2001). "[M]aking an independent determination as to the relevancy of a particular aspect of the plaintiff's employment status and that of the non-protected employee is crucial." *Id.* Indeed, one of the cases cited by the majority makes clear that the determination of whether a comparator employee is similarly situated must be based on "all material respects" of the case. *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 618 (7th Cir. 2000). "[A] court must look at all *relevant* factors, the number of which depends on the context of the case." *Radue*, 219 F.3d at 617 (emphasis added). In *Gibson*, as here, one of the comparator employees in the trial court's analysis was plaintiff's immediate supervisor. *Gibson*, 308 N.C. at 142, 301 S.E.2d at 85. The majority opinion, holding that the same supervisor requirement bars this plaintiff as a matter of law from making a *prima facie* case is inconsistent with these cases, and overlooks the crucial and undisputed fact that the plaintiff and his comparator (Elufiede) actually reported to the *same* supervisor (Ramsey) regarding the matter at issue.

Here, both plaintiff and Mr. Elufiede were faculty members working for defendant; both were under the supervision of Mr. Ramsey with regard to final decisions on grade changes; both were subject to the same policies and procedures regarding grade changes; and both approved the same proposed grade change for the same student in the same course. Although the majority states that the actions of the two were not similar because "plaintiff initiated the grade change" but Mr. Elufiede "merely approved it," no evidence suggests that defendant used this purported difference to justify treating the two differently. To the contrary, the evidence indicates strong similarity in their actions, that "[b]ecause Mr. Elufiede felt that [plaintiff's grade change] request was legitimate, Mr. Elufiede signed the request." The stipulated summary of the evidence reveals the following from Mr. Elufiede's narrated testimony:

If Mr. Miller broke the policy by recommending the grade change, then Mr. Elufiede broke the policy by approving it, but he was he not fired. Mr. Rainey (black) was hired to replace Mr. Miller. . . .

> Because Mr. Elufiede felt that Mr. Miller [sic] [grade change] request was legitimate, Mr. Elufiede signed the request.

In light of this evidence of "relevant factors," I am unable to conclude, as a matter of law, that plaintiff and Mr. Elufiede are not similarly situated under the applicable case law. *Radue*, 219 F.3d at 617. Thus, considering the evidence in the light most favorable to the plaintiff, as the law requires, this issue was properly for the jury to decide.

Further, because "the ultimate question in every employment discrimination case involving a claim of disparate treatment is whether the plaintiff was the victim of intentional discrimination," the identity and actions of the decision-maker are relevant factors. *See Hill v. Lockheed Martin Logistics Mgmt.*, 354 F.3d 277, 286 (4th Cir. 2004) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 153, 147 L. Ed. 2d 105, 123 (2000)). In adverse employment actions, an employer is liable for the improper motivations of the "person who in reality makes the decision." *Id.* 354 F.3d at 31. The U.S. Supreme Court, in *Reeves*, held that the employer was not entitled to judgment as a matter of law under the *McDonnell Douglas* framework where one of petitioner's superiors in the chain of authority, "was motivated by [discriminatory] animus and was principally responsible for petitioner's firing." *Reeves*, 530 U.S. at 151, 147 L. Ed. 2d at 122. Thus, when the alleged discrimination was committed by someone other than the plaintiff's direct supervisor, the identity and motivations of the decision-maker, rather than the direct supervisor, are the proper points of focus in establishing the *prima facie* case. *Cf. Price Waterhouse v. Hopkins*, 490 U.S. 228, 277, 104 L. Ed. 2d 268, 305 (1989) (O'Connor, J., concurring) (holding that statements by nondecision-makers are not relevant to satisfying the plaintiff's burden of proving discrimination); *Koski v. Standex Int'l Corp.*, 307 F.3d 672, 678 (7th Cir. 2002) (noting that the pertinent inquiry is whether the decision-maker, as opposed to other managers or subordinates, evaluated the aggrieved employee based upon discriminatory criteria).

As a result of their essentially identical actions, plaintiff was fired and Mr. Elufiede was not. Plaintiff was replaced by an individual of the majority race in his employment situation. Plaintiff alleges racial discrimination accounts for this action, and the evidence constitutes more than a scintilla of evidence to support the plaintiff's *prima facie* case, based on both replacement theory under *Brewer*, and on disparate treatment theory by Ramsey of similarly situated employees (plaintiff and Elufiede). Under *McDonnell Douglas* and its progeny as

well, this evidence constitutes a *prima facie* case. *See Hill, supra.* Whether defendant's contentions about non-discriminatory reasons for plaintiff's termination were persuasive was a factual matter for the jury to decide. Thus, I conclude that the court's denial of defendant's motions for directed verdict and JNOV were proper, and that we should affirm those rulings.

It is important to note that the majority opinion would have the effect of heightening the plaintiff's proof requirements in race discrimination cases, and would push our State's law outside the national mainstream, to the detriment of those who seek redress for discrimination based on race. Although this case involves "reverse discrimination" against a white plaintiff, the primary impact of the decision will be on those individuals and groups who have historically suffered the most from discrimination in our State. The United States Supreme Court has continually cautioned lower courts against attempting to impose heightened burdens on plaintiffs in race discrimination cases. *See Desert Palace, Inc.*, 539 U.S. at 101, 156 L. Ed. 2d at 95 (holding that "no heightened showing is required"). I do not believe this Court should increase such burdens, contrary to precedent, as the majority here has done. Thus, I respectfully dissent.

However, with respect to the issue of punitive damages, I agree that plaintiff failed to meet his burden. "Punitive damages are limited, however, to cases in which the employer has engaged in intentional discrimination and has done so 'with malice or with reckless indifference to the federally protected rights of an aggrieved individual.' " *Kolstad v. Ada*, 527 U.S. 526, 530-31, 144 L. Ed. 2d 494, 502 (quoting 42 U.S.C. § 1981a(b)(1)). "Applying this standard in the context of § 1981a, an employer must at least discriminate in the face of a perceived risk that its actions will violate federal law to be liable in punitive damages." *Id.* at 336, 144 L. Ed. 2d at 506. Plaintiff presented no evidence that defendant discriminated against him with the requisite intent, and the jury made no finding that defendant acted "with malice or with reckless indifference to the federally protected rights" of plaintiff. Thus, I agree that we must vacate the award of punitive damages.

In sum, for the reasons discussed above, I believe we should hold that the plaintiff presented sufficient evidence for his case to go to the jury. As a result, we should uphold the jury's verdict finding discrimination, and affirm the denial of the post-trial motions. However,

**WHITEHEAD v. SPARROW ENTER., INC.**

[167 N.C. App. 178 (2004)]

because the plaintiff presented no evidence to support the award of punitive damages, we should vacate that award and remand for the trial court to enter judgment on the underlying claim of discrimination. Therefore, I respectfully concur in part and dissent in part.